[Civil No. 1658.    Filed May 21, 1919.]

[181 Pac. 457.]

GILA LAND AND WATER COMPANY, a Corporation, Appellant, v. L. A. BROWN and C. E. PAGE, Copartners Doing Business Under the Firm Name and Style of BROWN & PAGE, Appellees.

1. LANDLORD AND TENANT—UNLAWFUL DETAINER—RIGHT OF ACTION— STATUTE.—Civil Code of Arizona of 1913, paragraph 1552, gives no right of action for the possession of leased premises in an unlawful detainer action until the date on which the rent becomes due is determined, either from the face of the lease, or from evidence otherwise, and such rent remains unpaid for five days.

2. CORPORATIONS—NOTICE THROUGH PRESIDENT—INTEREST OF OFFICER. A land and water company, which leased to a partnership, is chargeable with notice of the agreement between the two partners, one of whom represented it in the forming of the agreement; he being both a party to the agreement and the president of the company.

3. CORPORATIONS — NOTICE TO PRESIDENT AS AFFECTING COMPANY—
LEASE AND PARTNERSHIP AGREEMENT — PROVISIONS.—A company,
which leased to a partnership composed of its president and another
person, is charged with knowledge of stipulations of the lease con-
tract and the partnership agreement.

4. LANDLORD AND TENANT—LEASE TO PARTNERSHIP—CONSTRUCTION.—
Lease by a land and water company to a partnership, composed
of its president and another, *held* to have constituted the president
the principal debtor to the company, with its assent; the other
partner being given no room to act, other than to operate the leased
land successfully, the president of the company being business
agent of the firm and principally looked to for payment of rent.

5. LANDLORD AND TENANT — LEASE—TIME OF PAYMENT OF RENT —
ESSENCE OF AGREEMENT.—Time of payment of rent, at dates men-
tioned in lease by land and water company to a partnership com-
posed of its president and another, *held* not of the essence of the
agreement, in view of proper construction of lease as primarily
selecting the president to pay rent, giving the other partner no room
to act, other than to operate leased land.

6. LANDLORD AND TENANT—PAYMENT OF RENT—CONTINUANCE—AVOID-
ANCE OF FORFEITURE—SUFFICIENCY OF EVIDENCE.—In action of un-
lawful detainer by land and water company, against a partnership
composed of its president and another, evidence *held* to justify
finding that payment of rent on January 1, 1918, was unnecessary
to a continuation of the lease, and that operation of continuance
of rent secured by president partner avoided a forfeiture.

7. PARTNERSHIP—EXTENSION OF TIME—RIGHT OF FIRM.—Where a land
and water company leased to a partnership composed of its presi-
dent and another, the president being financial manager of the firm,
and primarily liable for rent, while the partnership was secondarily
liable, an extension of time for payment of rent, granted to the
president, inured to the benefit of the firm, and the president's
attempt to surrender the lease to the disadvantage of his partner's
rights, and to direct the lessor company to re-enter and dispossess
him, was a fraud on such other partner, in which the lessor com-
pany cannot be permitted to succeed in its action for unlawful
detainer.

8. LANDLORD AND TENANT—UNLAWFUL ENTRY AND DETAINER—EVI-
DENCE.—In action of unlawful detainer, evidence as to shortage of
water furnished by the lessor company to the leased land, and as
to damages to crops, etc., *held* admissible, because of the inquiry
as to the amount of rent the lessor could recover, if it recovered
the premises, having no bearing on the issue of re-entry and pos-
session.

9. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.—
In forcible entry and detainer, plaintiff landlord cannot be injured

XX Ariz.—26

by admission of evidence as to amount of rents, if it recovered possession, where judgment went against it on issue of possession.

[As to mere use of land for partnership purposes, see note in 48 Am. St. Rep. 69.]

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

The appellant commenced this action, alleging that it, as a corporation, on the first day of February, 1917, by written instrument, "let, leased, and rented unto the said defendants the following described real estate, situate in Maricopa county, Arizona, to wit," describing the lands, amounting to 440 acres, more or less, "together with all water from the Buckeye canal necessary to properly irrigate all the crops to be grown on said premises." The term of lease is alleged to have been for "two years from the 1st day of February, 1917," and the rental therein agreed to be paid by the defendants was the sum of $11 per acre per annum, payable annually, commencing on the first day of January, 1916; and it was also provided in said lease that the said defendants should pay to the plaintiff the further sum of $2,718, to be paid in installments as follows:

"$1,000 to be paid on July 1, 1917, and $1,718 to be paid December 1, 1917, and that in the event that any or all of the above amounts should be and become due and unpaid that said lease should terminate, and that the plaintiff thereupon should have the right to immediately re-enter the said premises and resume possession thereof and to remove all persons therefrom."

The plaintiff alleges in substance:

"V. That on the 12th day of January, 1916, long after the said amount specified became due and unpaid, and after the termination of the time when said premises were so let to them, by reason of their permitting said rental and other installment to be and become due and unpaid, and after demand for such payment, the plaintiff made demand in writing upon the defendants for the possession of the said premises, said plaintiff being entitled to the possession thereof under said agreement of lease, and notwithstanding which said written demand, so made as aforesaid, and the facts

herein stated, the said defendants willfully and without force do still hold the said lands and real property, and refuse to deliver the same and the possession thereof to the plaintiff, or to permit plaintiff to re-enter and take possession of the said premises."

C. E. Page, in behalf of the partnership, demurs to the complaint for failure to state sufficient facts, denies the execution of the lease mentioned in the complaint, admits that they are in the actual possession of the premises and alleges that such possession is lawful, denies that they are in arrears for rent, or that they are indebted in any amount to the plaintiff; sets forth breach of conditions of the lease by the plaintiff, and resultant damages to the defendants, and hence a counterclaim; also a counterclaim for betterments expended on the premises as a setoff, and payment of $1,200 on account of rents.

The cause was tried to the court with a jury. The jury returned its verdict of not guilty. The plaintiff moved for a judgment notwithstanding the verdict, which motion was denied. The plaintiff moved for a new trial, which was also denied. The court rendered its judgment for the defendants, from which judgment, and from the order refusing a new trial, plaintiff appeals.

Mr. J. E. Morrison, for Appellant.

Messrs. Hawkins & Anderson and Mr. J. P. Lavin, for Appellees.

CUNNINGHAM, C. J. (After Stating the Facts as Above). The appellant bases its right to recover the possession of the premises described in the complaint upon the failure of the defendants to pay rent for five days after the same became due and payable, as provided in a written lease theretofore existing between the plaintiff and the defendants. The plaintiff evidently relied upon paragraph 1552, Revised Statutes of Arizona of 1913, giving its right of action, and upon a violation of the terms of the lease as its right to re-enter the leased premises for the nonpayment of said rent or violation of said lease.

Under the evidence and the conceded facts, the lease involved in this case is evidenced by two separate papers, one

in form of a lease from Gila Land & Water Company to Brown & Page, signed only by L. A. Brown as president, and by W. G. Hubbard, as secretary of said corporation. The other paper is in form a partnership agreement between L. A. Brown and C. E. Page, by the terms of which Brown contributed the lease and Page agreed to contribute his time and skill as a farmer, etc. The terms of the lease which Brown agreed to contribute to the partnership stock are the same, with slight exceptions, as the terms set out in the lease unsigned by the lessees. The evidence is without conflict tending to show that the Gila Land & Water Company required Page to take L. A. Brown into a special partnership as a condition precedent to leasing this land. Brown was accepted as Page's partner, so that the plaintiff would be assured of its rent. It looked to Brown for its rent, and he was looked upon as the responsible party.

Of course, this is an unlawful detainer action, arising from defendants' alleged failure to pay rent as stipulated. The right to re-enter is denied, and hence the right of action occurs. Before the plaintiff can recover, in this kind of summary proceeding, he must allege and prove that the defendant is unlawfully holding the premises after all his rights under the lease have terminated. The exact amount of rent and the exact date the rent is payable must be determinable from the evidence. Until the date upon which the rent becomes due is determined, either from the face of the lease or from evidence otherwise, and remains unpaid for five days, the statute (paragraph 1552, *supra*) gives no right of action for the possession.

The appellant assigns error in eleven separate paragraphs, and states as follows:

"The entire matter hinges upon the construction of the lease, and whether the appellant could be charged with the result of a shortage of water occasioned by acts, occurrences, and conditions beyond its control, and which it could not possibly have avoided."

The "lease"—the paper signed by the Gila Land & Water Company—purports to lease 440 acres of land in Maricopa county, "together with all water from the Buckeye canal necessary to properly irrigate all crops to be grown on the said premises," to Brown & Page, copartners, "for the term of two years from the 1st day of February, 1917, for the

annual rental of eleven dollars per acre, to be paid on or before the 1st day of January, 1918, and the further payment of the sum of two thousand, seven hundred and eighteen dollars, to be paid as follows: One thousand dollars to be paid on or before the 1st day of July, 1917, and the balance, to wit, seventeen hundred and eighteen dollars, to be paid on or before the 1st day of December, 1917.

"And it is further agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, that it shall be lawful for the said party of the first part to re-enter said premises and remove all persons therefrom. And the said party of the second part does hereby covenant, promise, and agree to' pay the said party of the first part the said rent in the manner hereinbefore specified. . . . "

The articles of partnership between L. A. Brown and C. E. Page, of the terms of which the Gila Land & Water Company are chargeable with full knowledge, because, under the evidence, no lease would have been granted in the absence of a partnership satisfactory to the Gila Land & Water Company, are dated the twenty-sixth day of January, 1917, and recite that:

"Whereas, the said C. E. Page has heretofore entered into negotiations with L. A. Brown and W. C. Hubbard and James Ovens, joint owners of the real property hereinafter described, for the lease of said property; and whereas, by reason of the inability of the said C. E. Page to comply with the requirements of the said Brown, Hubbard and Ovens, said negotiations failed of success; and whereas, the said C. E. Page is desirous of securing a lease on said premises for the purpose of growing, among other things, a crop of cotton thereon; and whereas, the said L. A. Brown, by reason of his relations with the said Hubbard and Ovens, is able to secure advantageous terms of lease of said premises, and whereas, the said L. A. Brown, by reason of his business connections, is in a position to finance, and will finance when necessary, the partnership hereinafter formed:

"Now, therefore, the said parties above named have agreed, and do by these presents agree, to become partners together under the firm name of Brown & Page in the business of general farming, and their copartnership to commence on the date of the execution of this agreement and

to continue until the 1st day of February, 1919. And in consideration thereof the said L. A. Brown covenants and agrees with the said C. E. Page to procure in behalf of Brown & Page a lease from the owner or owners thereof, for a period of two years ending the 1st day of February, 1919, of the following described premises situated in Maricopa county, to wit. . . . ''

There follows a description in exact words and figures as contained in the said lease, *supra*. Following the description of the property is the following:

''At and for the annual rental of eleven dollars an acre on the following terms and conditions: The said rental to be paid on or before the 1st day of January of each year of said lease, beginning with the 1st day of January, 1918, and the further payment of the sum of two thousand seven hundred and eighteen dollars, to be paid as follows: one thousand dollars to be paid on or before the 1st day of July, 1917, and the balance, to wit, seventeen hundred and eighteen dollars, to be paid on or before the 1st day of December, 1917.''

Thereafter follow stipulations pertaining to the partnership matters among themselves, but which are immaterial to the present inquiry. The parties to be charged, L. A. Brown and C. E. Page, did not sign the formal lease, but they did sign the partnership agreement. The Gila Land & Water Company signed the lease, and, while it did not sign the partnership agreement, it required the identical partnership to be formed. Hence the Gila Land & Water Company is estopped in justice from requiring terms of lease other than such terms as are set forth in the partnership agreement. The plaintiff corporation had a right to re-enter and take possession of the leased premises for non-payment of the rent for five days, under authority of paragraph 1552, *supra,* whether a clause to that effect was absent from the lease or not. The plaintiff, in its complaint, bases its right to re-enter upon defendants' failure to pay rent, and their refusal to deliver possession. The inquiry is vital, therefore: Had defendants failed for five days to pay rent as stipulated in the lease, on the twelfth day of January, 1918, when plaintiff demanded possession in writing?

Brown testified that he is president of the plaintiff corporation, and as such signed the said lease in behalf of the

corporation. He testified that he did not know the exact amount of rent due under that lease. He said:

"I think it (rent due) is about $6,000; the company looked to me for the payment of that rent; they notified me several times, but on account of my illness, I presume, they did not push me as hard as they would have, and I asked them for a continuance on account of expecting our crops to come out and pay it all right by the first of the year; at that time I discovered that they would not be able to pay anything, and so I notified the company."

Hubbard, as a witness for plaintiff, and plaintiff's secretary, testified, among other things, that the company looked to Brown for the rent. After saying that the company "in a way" looked to Brown for the rent, the witness said:

"I looked to Brown, and when Brown was sick I looked to Page. . . . I wasn't acquainted with Page personally. I never met Mr. Page, except that one day; . . . prior to the agreement . . . I offered to let Page have it [the land on a lease], but not until he took a man in I knew was responsible. Brown was my partner at that time, and one of the owners of the land. I am secretary of the corporation, and Mr. Brown is president. . . . "

Page testified with respect to the payment of the rent as follows:

"I never heard that this water company had anything to do with the land. In paying the rent I sent the hay by Mr. Brown's orders, and billed the hay to the parties he ordered me to bill it to. . . . Mr. Brown and Hubbard and Ovens are the only ones I knew. . . . "

The corporation required Page to take a partner into the lease with him who was, to the satisfaction of the corporation, responsible; that is, financially able to meet the obligations imposed by the lease. Brown met the requirements, and the lease was granted to Brown and Page on the financial responsibility of Brown. The company is chargeable with notice of the partnership agreement between Brown and Page, for the reason that Brown represented the corporation in the forming of such agreement, and he was both a party to the agreement and the president of the corporation. As a consequence of plaintiff's full knowledge of the terms of the partnership agreement, plaintiff is charged with knowing that such lease contained the following clause:

"And in consideration hereof, the said L. A. Brown covenants and agrees with the said C. E. Page to procure in behalf of Brown and Page a lease . . ., for a period of two years ending on the 1st day of February, 1919, of the following described premises," etc.

And that the following clause also appears in said lease:

"Whereas, the said L. A. Brown, by reason of his business connections, is in a position to finance and will finance, when necessary, the partnership hereinafter formed."

The partnership term commenced and ended with the lease term. All parties are charged with knowing that a termination of the lease by any means would relieve Page from his obligation to retain Brown as a partner, and a termination of the partnership would relieve the corporation from its obligation to lease to Page. Brown assumed the position of principal debtor to the corporation with the assent of the corporation, and the condition precedent imposed no other alternative on Page. Page was given no room to act, other than to operate the farm successfully. Brown was business agent for the partnership, and was principally looked to for payment of the rent.

With this manifest construction placed upon the lease, the time of payment of rent at the dates mentioned in the lease is not of the essence of the agreement. Brown's failure to pay the $1,000 on July 1, 1917, and his failure to pay the $1,718 on the 1st day of December, 1917, is not a failure to pay rent. This is manifest from the plain words of the lease, which words are as follows:

" . . . For the term of two years from the 1st day of February, 1917, for the annual rental of eleven dollars per acre, to be paid on or before the 1st day of January, 1918."

A *further* payment is required to be made, $1,000 on July 1, 1917, and $1,718 on December 1, 1917. The evidence explains this further payment clause. Page said that the rental price was $11 per acre. "We were to take up the $2,800." On cross-examination he said:

"I don't think I testified that the $11 rental and the other two installments of money to be paid were mentioned in the partnership agreement. I don't remember that I testified that the $11 rent and the $1,000 rent and the $1,800 rent were in the partnership agreement. I had reference to $11

an acre that we were to pay rent.  We were to pay $2,800 that Mr. Millage was behind with them.''

No testimony denies that statement of Page.  The ''further payments'' required of Brown and Page were not understood as payments of rent, but the amount to be paid was an amount owing the company by Millage, a former tenant, and required to be paid as a consideration for the grant of the lease.

The record contains some evidence tending to prove that Hubbard refused to permit Brown to pay rent, and so informed Page; that Brown refused to pay rent, and Hubbard refused to accept payment of further rent, in order to terminate the lease and remove Page from the land, so that the company could make another and a more profitable disposition of the land.  Defendants' Exhibit 3, a telegram signed by Brown and delivered to Page on January 2, 1918, says:

''Have wire from Hubbard saying you have refused to pay rent and would not leave the place without seeing me.  We are going to sell and I want to give them possession at once. Wire me when you will get off.  Don't force me to come back.''

After Brown sent this wire, Brown testifies as follows:

''  . . . The company looked to me for the payment of that rent.  They notified me several times, but on account of my illness, I presume, they did not push me as hard as they would have, and I asked them for a continuance on account of expecting our crop to come out and pay it all right by the first year.  At that time I discovered that they would not be able to pay anything, and I so notified the company.  I was then in California.  I came from California to see Mr. Page about the payment of rent.  I put the matter squarely up to him, that we had to pay the rent or else we were going to lose the property.''

From this state of the evidence, the jury are justified in finding, as a fact, that the payment of rent on January 1, 1918, was unnecessary to a continuation of the lease, but the operation of Brown's continuance of rent avoided a forfeiture; that it was not the failure to pay rent that caused the desire to remove Page and dispose of his lease, but that it was because, as Brown stated in his wire of January 2, 1918, they had a chance to sell and Brown wished to sur-

render the lease to the company. Brown waived the extension of time for payment of the rent on January 1, 1918, and offered to surrender the possession, not because the rent was not paid, but because the corporation could sell the land to advantage.

The only issue triable was whether the lease had terminated because of the failure of the lessees for five days after the first day of January, 1918, to pay the rent, and the uncontradicted testimony is that the company had extended Brown's time for payment of rent and ceased to look to Brown for rent, and upon Brown's suggestion commenced to look to Page only for rent. The extension of the time for the payment of rent, granted to Brown, inured to the benefit of the partnership. Brown was the person primarily liable to the company under all of the evidence, and the partnership was secondarily liable; that is, the partnership was liable after Brown failed to pay. When his time for payment was extended, the partnership was not bound to pay the rent during the time the payments were so suspended, and Brown's attempt to surrender the lease, to the disadvantage of Page's rights, and direct the corporation to re-enter and dispossess Page, is a fraud on his partner, Page, and the corporation, being a party to such unjust attempt to dispossess Page, cannot be permitted to succeed by a court of justice.

The jury's verdict of "not guilty" is right, and based upon evidence almost, if not entirely, free from conflict. The plaintiff has wholly failed to show a termination of the lease by failure of the tenants to pay the rent as required by the changed terms of the lease. The judgment follows the verdict, and adjudges the defendants not guilty of an unlawful detainer of the premises described in the complaint and in the judgment. The defendants are adjudged their costs, amounting to $130.

The appellant's assignments of error, not disposed of above, have reference to matters connected with the duty of one partner to the other, and of the duty of the lessor plaintiff to keep covenants of its own, such as the payment by it of the water rates, the damage to the crops because of shortage of water, and such like matters. The tenth assignment about covers all of the questions raised. It is as follows:

"The court erred in denying appellant's motion for judgment notwithstanding the verdict, for the reason that the uncontradicted testimony in the case showed that appellees had not paid all of the rent and sums required by the lease, and that all evidence showing or tending to show any failure of consideration, and the amount of loss sustained by the appellees thereby, was not properly and lawfully admitted in evidence, and that being the only defense, and the other facts sustaining the judgment in favor of appellees having been clearly shown by uncontradicted and overwhelming proof, and not denied, and the only testimony properly introduced in the case sustaining the allegations of appellant's complaint, the motion should have been granted."

Without taking into consideration the apparently confusing statements in the said assignment, we are able to concede that all matters concerning the shortage of water and the damages to crops resulting from such shortage, and the expenditures of all kinds could become material in this kind of case only when the matter of the right of the plaintiff to re-enter is established, and the question of plaintiff's rent and the amount recoverable is before the court. In this case one of the issues presented was the amount of money the plaintiff was entitled to recover from the defendants in the event plaintiff was entitled to recover the possession. Such evidence was admissible at the trial, because of the inquiry of the amount of rent plaintiff could recover, in the event he recovered possession of the premises. The evidence had no bearing upon the issue of plaintiff's re-entry and possession. Under the judgment appealed from, a judgment denying the plaintiff's right to possession plaintiff is not injured in the remotest degree by evidence tending to establish the amount of rent recoverable by the plaintiff, had plaintiff been adjudged entitled to recover possession of the premises.

On the whole record, the evidence fairly sustains the verdict, the verdict is responsive to the issue tried; the judgment follows the verdict, and is therefore responsive to the pleadings.

According to the terms of the lease, the time has arrived—February 1, 1919—for final adjustment of the accounts, both of the corporation and of the partnership, and of the partners *inter alia*. This judgment is determinative of the fact that the lease did not cease on the failure to pay rent prior

to January 12, 1918. What may have transpired since that date is not involved in this case as a matter of course.

I find no reversible error in the record. The judgment is affirmed.

ROSS and BAKER, JJ., concur.