Willella Martin, Appellee, v. Val-Lo-Will Sherman Company, Appellant.

Gen. No. 44,492.

Opinion filed March 1, 1949. Released for publication April 26, 1949.

SCHWARTZ & COOPER, of Chicago, for appellant; IRA S. KOLB and JACOB COHEN, both of Chicago, of counsel.

ERWIN F. STOLLE, of Evanston, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed a complaint to enjoin defendant from maintaining a certain commercial electrical sign on the west wall of the building known as 1561 Sherman avenue, Evanston, Illinois. Plaintiff became a tenant of a second floor apartment in the building in 1942, and in 1946 defendant leased the store located on the ground floor of the building, immediately below plaintiff's apartment. Defendant uses the store as a place of business where poultry and kindred products are sold. On August 28, 1946, defendant caused the sign in question to be erected. The complaint alleges, *inter alia*, that the front of plaintiff's apartment consists of a protruding bay that contains three windows; that one window opens directly towards the west, one opens to the southwest and one to the northwest; ''that plaintiff's apartment is flanked on the immediate north by another second floor apartment of the same building and contains no windows whereby light and air may find their way into the apartment of the plaintiff''; that to the south of plaintiff's apartment the adjacent building is located so close to the south wall of the building in which plaintiff lives that she is forced to depend to a considerable extent on the three windows located in the bay of her apartment for light and air, and for a view of the outside world; that until defendant erected the sign the south window of the bay afforded plaintiff a view to the south along Sherman avenue ''and admitted whatever breeze and air was available on any given day or night''; that the sign, erected by defendant on the outer side of the west wall

of the building, is a large commercial electrical sign, approximately eight to ten feet high, two feet wide, and one foot thick, and is equipped with a large display of fluorescent lighting, advertising defendant's business; that the sign completely blocks plaintiff's view of Sherman avenue to the south, and bars the ingress of air and sunlight into plaintiff's living room; that defendant has kept the sign lighted during all of the hours of darkness so that the brilliant light shed by it penetrates the rooms of plaintiff, causing an annoying and extremely disagreeable glare, which prevents plaintiff from sleeping; that the installation and maintenance of the sign materially interferes with plaintiff's enjoyment of her living quarters and materially impairs the value and usefulness to plaintiff of said quarters.

The cause was referred to a master in chancery, who heard evidence and filed a report in which he found, *inter alia:*

"6. That the plaintiff has presented a prima facie case of impairment by the defendant of her quiet and peaceful use and occupation of her apartment; that, in other words, the defendant has apparently encroached, and is contemporaneously encroaching, upon the plaintiff's leasehold estate; that the plaintiff has no adequate remedy at law; that a chancery court has jurisdiction and authority to restrain and enjoin such a continuous encroachment."

The facts are not disputed. Plaintiff testified that she moved into the second apartment on the second floor, south, of the building about January, 1942, under a lease signed by the First National Bank and Trust Company of Evanston, as Trustee, and herself; that later the said parties signed a second lease. Both leases were introduced in evidence. She further testified that she had always paid her rent as required by the leases; that at different times a girl has lived with her in her apartment; that the front part of the place

has three windows; that the building is on the east side of Sherman avenue facing west; that the front room of her apartment faces Sherman avenue; that she uses that room for sleeping and for a sitting room; that the other rooms in her apartment are "a kitchen, dining room, and two other rooms"; that the front of the building, the bay and three windows, is the open space where she gets light and air for her apartment; that to the south there is another building with a store and an apartment above it; that there is one window on the south side of her apartment and when she looks out of that window she sees the apartment to the south; that the sign extends a foot below and a foot above her windows and extends at least seven feet out; that the sign "stands right in front of my windows, right straight, shutting off my air and light and covering my windows with bars and chains"; that the sign was placed there around August 28, 1946; that on that day she went into defendant's store, spoke to the woman manager and told her that she wanted the sign removed, that it was on her property and that it interfered with her light and air and interfered with her happiness in every way, and that the woman said she did not have authority to have the sign removed; that plaintiff then said: "I will leave you a written statement. Will you see that it gets to the proper authority?" and that the manager replied, "I will"; that plaintiff immediately wrote a statement asking defendant to remove the sign, and left the notice with the manager; that the sign was illumined and interfered with her sleep, flickered all the time when it was first put up, and ran all night at times; that it lighted the whole living room and when the curtains were drawn the light would come in through the cracks; that it was very brilliant and dazzling, radiating all the time; that some time after the suit was started the illumination was changed and the lights did not flicker, that they remained the same but were "just smooth"; that after

the illumination was changed there was still a brilliant light in her apartment; that the view and air, which plaintiff depends upon, are shut off; that the bay windows are her main windows and that the condition she complains of still exists. It was admitted by plaintiff's attorney that she is living in a commercial district.

We have before us as exhibits a number of photographs, that were taken by an officer of the police department of Evanston, which show clearly plaintiff's apartment and the sign, and they have greatly aided us in determining the merits of this case. The decree finds, *inter alia,* that the building in question is located in a commercial neighborhood; that defendant leased the store premises on the main floor of the building, underneath the apartment leased by plaintiff; "7. That on the 28th day of August, 1946, the defendant caused a commercial electric sign approximately 8 feet to 10 feet high, 2 feet wide and 1 foot thick, the same equipped with a display of fluorescent lighting and advertising the defendant's business, to be erected on the outer side of the west wall of said building; that the said sign extends from approximately a foot below to about a foot above the said window in the bay of plaintiff's apartment aforesaid; that the said sign lights the whole of plaintiff's living room, and, even when the curtains are drawn, the light from said sign comes in from certain cracks; that said sign is very brilliant and dazzling, and radiates when lighted a brilliant light in the apartment and shuts off part of the view of the street and air through part of the windows which plaintiff depends upon. 8. That the glare of said sign interferes with the sleep and rest of the plaintiff, and with her reasonable enjoyment of the said apartment occupied by her. 9. That the plaintiff has presented a prima facie case of impairment by the defendant of her quiet and peaceful use and occupancy of her apartment, and has encroached and is contemporaneously encroaching upon the plaintiff's leasehold

estate; that the plaintiff has no adequate remedy at law; that a Chancery Court has jurisdiction and authority to restrain and enjoin such a continuous encroachment." The decree ordered, *inter alia:* "4. That the People's Writ of Injunction issue forthwith . . . directed to the defendant . . . its officers, agents, solicitors, and servants, and each and every one of them, restraining them and each of them from in any way, directly or indirectly, maintaining that certain sign advertising the defendant's business in its present location on the outer west wall of the premises at 1563 Sherman Avenue . . . or in any other location or locations on said outer west wall of said Sherman Avenue side of said building which will restrict the ingress of light and air to the second floor apartment at 1563 Sherman Avenue . . . or permit an excessive glare from said illuminated sign in said apartment." Defendant appeals.

Defendant contends that "the demise of an apartment in a building does not include the outer walls" and "there are no implied easements of light, air, and view; . . . that they remain in the control of the lessor; and in view thereof, and in view of the fact that the common lessor of the parties has granted to the defendant express authority to erect the sign, defendant is not guilty of trespassing upon the property of the plaintiff; . . . that there can be no implied easements of light, air, and view"; that "since the defendant by affixing its sign, with the consent of their common landlord, to the outside wall of the plaintiff's apartment was not trespassing upon any estate of the plaintiff and since there are no implied easements of light, air, and view and in view of the fact that there is no claim of nuisance, the Court erred in issuing an injunction restraining the maintenance of defendant's sign." Plaintiff's theory is that her quiet and peaceful use and occupation of her apartment has been impaired by defendant and that defendant has en-

croached and is encroaching upon plaintiff's leasehold estate; that she has no adequate remedy at law and that a chancery court has jurisdiction and authority to restrain and enjoin such a continuous encroachment.

Defendant states in its brief that the common lessor granted it express authority to erect the sign in question upon the property of plaintiff. This statement is based, apparently, upon the assumption that as defendant in its answer to the complaint alleged "that the commercial electric sign which it erected in and upon the premises occupied by the defendant was done in accordance with and pursuant to the terms of the written lease" between defendant and the common landlord, and that as plaintiff did not file a reply to defendant's answer, she thereby admitted the said allegation of fact in the answer. The able attorneys for defendant did not introduce the lease in evidence and we are justified in assuming that if the lease supported the present contention of defendant it would undoubtedly have been introduced in evidence. The allegation in the answer upon which defendant relies amounts to no more than a mere conclusion of the pleader. *Moreover, it must be remembered that the landlord is not the plaintiff in the instant suit.*

Defendant concedes that the case of *Bloomington Lodge No. 281, B. P. O. of E. v. Roland,* 217 Ill. App. 435, supports the position of plaintiff and the decree, but it insists that the rule announced in that case "has been disaffirmed by the Supreme Court" in *Baird v. Hanna,* 328 Ill. 436, but in our opinion the ruling in the *Baird* case was not intended to apply to a case like the instant one. The opinion in that case states (pp. 436, 437, 439):

"This case involves an implied grant of an easement of light over a strip 13-1/4 feet wide in the north half of lot 49, in Fiddeman's addition to the city of Fairfield, as an incident to the south 71 feet of said lot, which is occupied by a residence and photograph

gallery. The gallery consists of three rooms on the north side of the building. The east room is the reception room and the west room is the dark room. The middle room is the operating room, where the exposures are made, and in the north wall of which is a skylight 12 feet by 12 feet, placed at an angle of about twenty-five degrees south from the perpendicular. George Newton acquired this property many years ago and later married. Subsequently he acquired the 13-¼-foot strip involved in this proceeding which lies immediately north of the portion of the lot occupied by the photograph gallery. On the east end of this strip of ground is a small building which stands immediately north of the reception room of the photograph gallery, and on the west end of the strip is another building north of the dark room. The space north of the operating room is now open and has been since the photograph gallery was erected, thereby affording an unobstructed flow of light through the skylight. Upon the death of Newton, his widow, Laura, became the owner of the property by virtue of his will. She continued to conduct the photograph business in the property until April 7, 1908, when she sold the business and the south 71 feet of lot 49, with the buildings thereon, to defendant in error, W. G. Baird. May 6, 1920, Mrs. Newton sold the 13-¼-foot strip of ground immediately north of the photograph gallery to plaintiffs in error T. P. Hanna and Barney Barnhouse. Subsequently they leased the property owned by them to plaintiff in error E. E. Goodman and his wife for a period of three years. Goodman conducts a restaurant in the building on the front end of the property. On August 4, 1926, he began the erection of a 30-foot addition on the west end of this building, and it is this addition which defendant in error charges will injure his property and business by obstructing his light. . . . In those jurisdictions where the doctrine of implied grant of an easement of light is

sustained in cases of real and obvious necessity it is denied where it appears that the owner of the dominant estate can at a reasonable cost and expenditure substitute other light in the building so that he may have the reasonable enjoyment of the same. (*Miller v. Hoeschler*, 126 Wis. 263, 8 L. R. A. (N. S.) 327; *Robinson v. Clapp*, 65 Conn. 365, 29 L. R. A. 582.) The simplest rule, and that best suited to a country like the United States, in which changes are continually taking place in the ownership and in the use of lands, is, that no easement of light can be acquired without express grant of an interest in or covenant relating to the lands over which the right is claimed. There is no claim in this case that defendant in error has an easement of light over the property of plaintiffs in error by reason of any covenant running with the land contained in the deed conveying the property to him. Under the well established law in this State defendant in error is not entitled to the relief prayed in his bill for an injunction.''

In the instant case one tenant of the building is seeking to make use of the property of the common landlord in such a way as to seriously interfere with plaintiff's quiet use and enjoyment of her apartment that was leased to her by the common landlord. It is significant that defendant erected the sign in a place where it would not interfere with its light and air—the entire sign is higher than the top of defendant's store. Plaintiff was a tenant in the building four years before defendant became a tenant. If defendant's theory of the law is sound, it would have the right to erect a wooden advertising sign around the bay in plaintiff's apartment and thereby block off all light, air and view from plaintiff's apartment and make the apartment useless for residential purposes. Plaintiff argues that if defendant's theory of the law is sound then she would have the right to erect an advertising sign that would practically cover the front of defendant's store.

Defendant has not cited any case that holds that one tenant in a building has a right to interfere with the peaceful and quiet enjoyment of the tenancy of another tenant. The able opinion in the *Bloomington Lodge* case, *supra,* applies to the facts of the instant case and supports the position of plaintiff. We think it would be highly inequitable to deny plaintiff the relief she asks.

The decretal judgment of the Superior court of Cook county is affirmed.

*Decretal judgment affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.