MAX CZECH *et al vs.* JOSEPH F. ZUROMSKI *et al.*
MAY 9, 1955.
PRESENT: Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action of the case by lessees against their lessors for money had and received as advance payment of rent under a covenant therefor in an indenture of lease. The case is here on the defendants' exception to the trial justice's decision for the plaintiffs in the sum of $500 plus interest of $107.50.

The defendants contend that such decision is against the law and the evidence and the weight thereof. They argue that the evidence shows plaintiffs had entered into a lease for one year under which they were obligated to keep the rent paid three months in advance; that the amount of $500 for which they brought suit was a portion of such advance rent; and that in law they were not entitled to a refund thereof when they voluntarily vacated the demised premises before the expiration of the lease.

The plaintiffs contend that no lease existed at the time they surrendered possession. On the contrary they claim that they were merely tenants holding over from month to month or at most from year to year. The trial justice found that there was no lease and that plaintiffs were holding over as tenants from year to year. Therefore the basic question here is one of fact. Does the evidence show that plaintiffs

were tenants under a lease for a year or under some less definitive form of tenancy?

It appears from the evidence that plaintiffs became defendants' tenants originally under the following terms and conditions. In 1946 defendants leased a store at 19 Dexter street in the city of Pawtucket to Shetley's Stores, Inc. for a term of three years commencing September 1, 1946 at a yearly rent of $3,000 payable in the following manner: "Said Lessee shall pay said rent in equal monthly payments in advance of Two Hundred Fifty ($250.00) Dollars each on the 1st business day of each and every month succeeding the date hereof until said rent is paid in full, and shall keep said rent paid three months in advance; and said Lessors do hereby acknowledge that said rent is now paid in advance for three months and that the payment of said monthly rent as aforesaid will keep said rent paid three months in advance as required by this lease."

In accordance with that covenant Shetley's Stores, Inc. paid defendants $750 and also the monthly rent in advance as long as they remained in possession. However, in June 1948 they, as seller, and plaintiffs, as buyers, entered into a written agreement whereby plaintiffs came into possession of the leased premises. A portion of such agreement which is pertinent here reads as follows:

"Whereas the Seller has paid to Joseph F. Zoromski of the City of Central Falls, County of Providence, State of Rhode Island and Arnold Wood of the City of Pawtucket, County of Providence, State of Rhode Island the sum of seven hundred fifty dollars pursuant to the terms of a certain lease dated March 31, 1947, entered into between the said Joseph F. Zoromski and Arnold Wood as lessors and Shetley's Stores Inc., as lessees, and

Whereas the Buyers are desirous of re-imbursing to the Seller the said sum of seven hundred fifty dollars,

Now, Therefore, it is mutually Agreed as follows:

1. That the Seller hereby sells to the Buyers and the Buyers hereby purchase from the Seller all the Seller's

right, title and interest in and to all of the furniture and fixtures set forth in 'Schedule A' annexed hereto in the sum of one thousand seven hundred dollars, and the Buyers further covenant to pay to the Seller the aforesaid sum of seven hundred fifty dollars heretofore paid by the Seller pursuant to the terms of the lease * * *."

Thereafter plaintiffs were recognized by defendants as the lessees and they regularly paid the monthly rent in advance until December 1949. They voluntarily surrendered possession of the leased premises on the last day of that month pursuant to their written notice of intention to quit which they had previously served on defendants. In the meantime, however, plaintiff Czech and defendant Zuromski entered into negotiations in June 1949 for a new lease to run for one year from the date of the expiration of the old lease, August 31, 1949. They orally agreed on a lease for such period under the same terms and conditions as the old lease. This agreement was thereafter reduced to writing and signed by defendants. It was then delivered to plaintiff Czech who also signed it.

The plaintiff Peter Kielbasa at that time was out of town. After signing the lease Czech left it on the desk for Kielbasa to sign when he returned, if he wished to. However, Czech testified that upon his return Kielbasa refused to sign because he thought the rent should be reduced. Kielbasa did not testify. After he refused to sign the lease Czech eradicated his own signature therefrom but he did not return the lease to defendants until plaintiffs were about to quit the premises. Nevertheless plaintiffs continued to occupy the premises after the old lease expired and they paid the monthly rent of $250 in advance as stipulated therein for September, October, and November 1949. And during that period they did not ask for the return of the $750 which kept the rent paid three months in advance as required by the lease.

The plaintiffs are partners. Czech attended to the store while Kielbasa was employed as a salesman on the road for

an employer not involved here. The defendants Zuromski and Arnold Wood are the owners of the leased premises but it appears that Zuromski acted for both in the instant transaction. All negotiations for the new lease appear to have been conducted solely by Czech and Zuromski. In the circumstances there is no question but that each had the authority to enter into an agreement binding upon his associate. The defendants concede this. The plaintiffs seek to avoid the effect of Czech's conduct by claiming the negotiations were incomplete and did not result in a binding agreement in the absence of Kielbasa's written assent to the lease.

There is some conflict in the testimony on that point. Zuromski testified that he and Czech orally agreed in June 1949 that plaintiffs could continue in possession after August 31, 1949 under the same terms and conditions set out in the old lease except that the tenancy would run only for a year. He further testified that such agreement was reduced to writing in the form of a new indenture of lease which he and Wood signed and thereafter delivered to Czech. He heard no more from Czech about the lease until plaintiffs gave notice that they were moving out in December 1949. It was Zuromski's understanding that after August 31, 1949 plaintiffs remained in possession under the new lease and that he had heard nothing from Czech to the contrary.

Apparently this was also Czech's understanding of their negotiations when he received the written lease, since on that point he testified on cross-examination as follows: "Q. I will ask you, Mr. Czech, whether or not in June of 1949 you agreed with Mr. Zuromski for the renewal of the lease for a period of one year on the same terms and conditions as the Shetley lease? A. That is right. Q. And, as a result of that agreement, I drew up this typewritten form? A. Correct. Q. And Mr. Zuromski and Mr. Wood signed it? A. That is right. Q. It was delivered to you? A. Yes, sir. Q. You signed it? A. I signed it."

In his direct examination he had sought to put a different light on such negotiations as shown by the following testi-

mony: "Q. Will you tell the Court precisely what the discussions were about? A. Well, we felt that the lease price, the rental, was a little too high and so we asked for a reduction from our landlords and under those circumstances maybe we could sign another lease. Q. Well, what happened? Prior to August 31 did they agree to give you a reduction? A. No, he did not. Q. And did you have some talk with either Mr. Zuromski or Mr. Wood with reference to a new lease? A. Yes, we did. Q. And will you tell the Court what that was? A. Well, we felt that since our lease was running out we wanted another one so that we would be safe in continuing in the premises. Q. What was that, please? A. I said that we asked for another lease and that we wanted to be safe in having another so that we could remain on the premises. Q. Was your partner, Kielbasa, in town at the time you had this talk? A. No. Peter Kielbasa was on the road. He was with a clothing outfit. Q. Now, did the landlords prepare or have a lease prepared for a new term? A. Yes. When we couldn't arrive at any reduction, I felt that I ought to go ahead and get a lease prepared for Peter's look-see when he comes back."

From our examination of the transcript we are of the opinion that such conflict in the testimony can be satisfactorily resolved only by a consideration of it in the light of plaintiffs' conduct after the original lease had expired on August 31, 1949. After that date their rights and obligations under the terms and conditions of such lease ceased, unless they contracted with defendants to renew or extend them. In the absence of such an agreement plaintiffs were entitled to demand and receive from defendants the $750 paid to them to keep the rent paid three months in advance.

The plaintiffs did not demand that sum and continued to pay monthly rent in advance. If they were not holding over under a lease with the same terms and conditions as the old lease they were entitled, after August 31, 1949, to receive that sum or they could have refrained from paying rent for the months of June, July and August 1949 and could have

had the $750 applied to such rent. Apparently they did not choose to avail themselves of either right because they desired to continue to occupy the leased premises under the same terms as the old lease, but at a reduced rent if possible. Hence the negotiations in June 1949 for a new lease. As a result of those negotiations, although no reduction was granted, Czech did obtain an extension of the old lease for another year whereby defendants were entitled to retain the $750 and to continue to receive the monthly rent of $250 in advance. The plaintiffs by refraining from demanding the $750 and by paying the monthly rent as usual in advance after August 31, 1949 acted consistently with the understanding that a new lease had been negotiated.

If, when Kielbasa refused to sign and Czech eradicated his signature from the new lease, plaintiffs understood they had no lease after August 31, 1949, why did they continue to pay monthly rent of $250 in advance while at the same time defendants retained $750 of their money under an agreement which had expired? It seems to us that such conduct is consistent only with the fact that they had obtained an extension of the old lease for a year under precisely the same terms and conditions. Therefore, we are of the opinion that the trial justice's decision that there was no lease is clearly wrong.

The absence of Kielbasa's signature on the written lease is of no consequence. A lease for a year is not required to be in writing in order to be valid. General laws 1938, chapter 481, §1. And even if a writing were necessary Czech's signature alone would bind the plaintiffs. As Kielbasa's partner he had the authority to bind him in this partnership transaction, and he effectually did so when he concluded his negotiations with Zuromski. By eradicating his name from the written lease after Kielbasa refused to sign it, he did not cancel the agreement which he had entered into orally with Zuromski.

The plaintiffs remained obligated under the lease thus

agreed upon. Their failure to pay the monthly rent for December was a breach of the lease. The surrender of the keys to the premises and their acceptance by the lessors at the end of that month did not cure such breach so as to entitle plaintiffs to demand a refund of the $750 minus $250 for the December rent. Their voluntary surrender of the leased premises before the expiration date of the lease without any prior agreement on the part of defendants did not obligate defendants to refund any portion of the rent which had been paid in advance in accordance with plaintiffs' covenant in the lease. 52 C.J.S., Landlord and Tenant, §545 b., pp. 355, 356. By such acceptance defendants at most may have possibly waived their right to damages for breach of the lease but not their right to retain any sum they had received as rent thereunder.

However, Czech testified that when the keys were delivered to defendants in December they said a check would be mailed the next day for $500, the amount of advance rent that plaintiffs claimed was unearned. Zuromski denied that he made such a statement. We do not think plaintiffs made this a condition of their surrender of the premises. Their own evidence shows that, regardless of the three months' rent which they had kept paid in advance in the sum of $750 and which defendants had not offered to return when served with plaintiffs' notice of intention to quit, they intended to surrender the premises at the end of December and not merely to move out. But even if defendants, upon receiving the keys at that time, expressed an intention to refund $500 it would not be binding on them unless plaintiffs could show that such was the condition previously agreed to upon which the keys were surrendered. We find no evidence to that effect in the record. In our opinion the breach of the relationship of lessors and lessees was voluntarily initiated and consummated solely by the plaintiffs.

The defendants' exception is sustained, the decision is reversed, and the plaintiffs may appear before this court

on May 18, 1955 to show cause, if any they have, why the case should not be remitted to the superior court with direction to enter judgment for the defendants.