452 P.2d 122

Henry A. THOMPSON, Appellant,

v.

Joe B. HARRIS and Dortha Harris, his wife, Appellees.

No. 1 CA–CIV 748.

Court of Appeals of Arizona.

March 13, 1969.

Rehearing Denied April 4, 1969.

Review Denied May 6, 1969.

Leven B. Ferrin, Phoenix, for appellant.

Hughes, Hughes & Conlan, by John C. Hughes, Phoenix, for appellees.

HATHAWAY, Judge.

On March 16, 1962, Thompson leased the Longbranch Bar, 1937 East Indian School Road, Phoenix, Arizona, from Harris. The lease, which provided for monthly payments of $250, with the first and last payable in advance, was to extend to March 31, 1970. The landlord, Harris, covenanted in the lease to keep the premises in repair.

Sometime after the lease was entered into, the tenant installed an evaporative cooler on the roof of the building. The landlord testified that this installation was somewhat second-rate. There was no means provided for the exhaust water to be removed and it was apparently allowed to drain onto the roof in the area of the cooler whenever the cooler was in use. In addition, there was evidence that the roof was not waterproofed around the cooler after it was installed. The landlord further testified that the building had been reroofed just prior to the tenant's entry.

In October, 1965, the tenant assigned his lessee's interest to one Utley. He testified that it was at about this same time that the roof of the building began to leak. The lease required the landlord's approval for an assignment by the tenant, but the landlord refused to grant approval. The evidence shows that this refusal was at least in part because of the leaking roof and, further, that the landlord believed that the problem was created by the installation of the cooler. The tenant eventually consented to pay for repair of the roof, whereupon he paid $75 to the landlord, who then consented to the assignment. Shortly thereafter, the landlord personally made an unsuccessful attempt to patch the roof.

A year later, October, 1966, the tenant re-entered the premises. He testified that the roof had been leaking all the time that Utley was in possession and was still leaking when he re-entered. The landlord was again informed of the leaking roof and on March 5, 1967, again made some personal effort to repair the roof. On March 14, following, the tenant again reported, by letter, that the roof was still leaking. The landlord ignored the letter because "there wan't any rains then, so how would he know?" On March 28 it rained again, and the tenant again mopped the barroom floor.

Sometime during this period an additional problem developed. The landlord had leased land adjacent to the bar to another tenant who had built thereon two other buildings. One of these buildings was built with a common wall to the bar and was used as welding shop. There were no toilet facilities installed in the welding shop.

The tenant, Thompson, soon discovered that the wall upon which the welding shop had been built began to emit an offensive odor and he testified that it actually began to leak. Upon investigation he found that at least one employee of the other tenant was using the common wall as a toilet. Pleas by Thompson for this man and others to use the rest room in the bar were successful at first, but apparently the wall method was more convenient and was almost immediately reverted to, if ever abandoned. Thompson's offer to the other tenant to let him attach a sewer line to that of the bar, for one half of Thompson's cost of the initial installation, was rejected as being too high. The landlord apparently talked with the other tenant but refused to become further involved in the problem, stating that this was something Thompson had to take care of himself.

By the end of March, 1967, Thompson had apparently concluded that his pleas to the landlord concerning both of these problems would continue to go unheeded unless some more drastic action was taken. He therefore deducted from the April rent

expenses of $56 for mopping rain water and $100 for mopping urine and for deodorants. The remaining portion of the April rent, $94, was sent to the landlord, who immediately returned the check with Notice of Termination. This notice cited failure to pay rent and also failure to control an unsanitary condition on the premises (the unsanitary wall). When Thompson failed to vacate, the landlord brought suit to evict him. The parties have referred to this action in the briefs as an action for forcible entry and detainer under A.R.S. § 12–1171. We think the action comes under the provisions of A.R.S. § 33–361 instead.[1] The complaint is sufficiently broad to meet the provisions of either, however. *See* Gila Land & Water Co. v. Brown, 20 Ariz. 400, 181 P. 457 (1919).

The trial court found for the landlord and awarded immediate possession of the premises and the sum of $250 for the April rent, "except for the sum of $56 which is set off against the amount due and owing, being the storm damage from the rain storm on March 28, 1967." The landlord was also awarded $150 attorneys' fees and the court found that he had no obligation to police the extraordinary use of the common wall by other tenants.

■ Since the tenant has abandoned the premises after judgment and testified that he was preparing to do so during trial,

there is a question of mootness. He has stated in his brief, however, that he has abandoned the premises only because of the landlord's action and wishes to put back into possession for the remainder of the term of the lease. Therefore, a real controversy still exists and the parties have a real interest therein.

We have rephrased some of the questions presented by the tenant which we now consider.

■ The tenant contends that his failure to pay the rent in full for the month of April, 1967, did not constitute a breach of the lease on his part because, as the trial court found, the landlord was already in violation of his covenant to repair the roof. We agree that the trial court must have concluded that the landlord had breached a duty to the tenant when it awarded the set off of $56 to the tenant. We disagree, however, that such a finding requires a conclusion that the landlord had already breached the lease at the time the tenant tendered the reduced rent payment. Although not raised in the briefs, we think the uncontroverted testimony shows that the landlord's duty to repair the roof is the product of a separate contract rather than a covenant in the lease, in view of the landlord's testimony that the roof was in good repair on the date of the lease and that the failure of the roof was due to the

---

1. A.R.S. § 33–361 provides:

"A. When a tenant neglects or refuses to pay rent when due and in arrears for five days, or when tenant violates any provision of the lease, the landlord or person to whom the rent is due, or his agent, may re-enter and take possession, or, without formal demand or re-entry, commence an action for recovery of possession of the premises.

"B. The action shall be commenced, conducted and governed as provided for actions for forcible entry or detainer, and shall be tried not less than five nor more than thirty days after its commencement.

"C. If judgment is given for the plaintiff, the defendant, in order to perfect an appeal, shall execute a bond to the opposite party to pay twice the value of the rent pending the appeal in event judg-

ment on appeal is against him, and that he will prosecute the appeal to effect and abide the decision of the court thereon.

"D. If the tenant refuses or fails to pay rent owing and due, the landlord shall have a lien upon and may seize as much personal property of the tenant located on the premises and not exempted by law as is necessary to secure payment of the rent. If the rent is not paid and satisfied within sixty days after seizure as provided for in this section, the landlord may sell the seized personal property in the manner provided by § 33–1023.

"E. When premises are sublet or the lease assigned, the landlord shall have a like lien against the sublessee or assignee as he has against the tenant and may enforce it in the same manner."

tenant's carelessness in installing the cooler. We think the tenant's payment of $75 to the landlord for repair of the roof, when the lease was assigned to Utley, can only be taken as an admission that the damage to the roof was of his own doing. The landlord's duty to repair the roof grew out of his acceptance of the $75. His failure to perform that duty, though actionable in contract, had nothing to do with the lease. We therefore hold that the landlord did not breach the lease by failing to repair the roof.

■ The trial court determined that, because of its finding that the landlord had no obligation to police activities of his other tenants, the deduction of the $100 claim for rent check for mopping and deodorants was unwarranted and gave the landlord a right of eviction. The general rule is that covenants in a lease are independent, unless expressly made dependent, and that breach by one party gives rise only to a suit for damages and does not excuse performance on the part of the other party. Restatement (Second) of Contracts § 290; Hosang v. Minor, 205 Cal.App.2d 269, 22 Cal.Rptr. 794 (1962). Since the tenant claims that he has in effect already paid the rent, a portion of which was paid by paying the damages which accrued at the fault of the landlord, we will consider whether the landlord had a duty to police the activities of his other tenants.

Both parties have taken their respective courses, which led to this action, in the belief that the other party had a duty to correct the situation behind the reeking wall. The tenant made the $100 deduction from the rent on that assumption and the landlord gave notice of termination of the lease, in part, on the same basis. The tenant, in his brief, cites much extraneous authority having to do with the landlord's obligation under a covenant for quiet enjoyment. All of his citations deal with acts of the landlord and have no relevance to the facts of this case. Neither party has cited a case involving the acts of other tenants. We assess the law to be in favor of the landlord on this point.

■■ We know of no case in this jurisdiction dealing with the duty of a landlord to police the activities of other tenants. Cases from other jurisdictions clearly indicate, however, that the landlord's obligation under a covenant of quiet enjoyment (which is imposed upon the landlord even though not within the terms of the lease, Barry v. Holmesley, 24 Ariz. 375, 210 P. 318 (1922)) does not extend to acts of other tenants or third parties unless such acts are performed on behalf of the landlord or by one claiming paramount title. Kulman v. Sulcer, 99 Ga.App. 28, 29, 107 S.E.2d 674 (1959); McCappin v. Park Capitol Corp., 42 N.J.Super. 169, 126 A.2d 51, 58 A.L.R. 2d 1285 (1956); Lost Key Mines v. Hamilton, 109 Cal.App.2d 569, 241 P.2d 273 (1952); Bilicke v. Janss, 14 Cal.App. 342, 112 P. 201 (1910); Peterson v. Bullion-Beck & Champion Mining Co., 33 Utah 20, 91 P. 1095 (1907); Eley v. L. & L. Mfg. Co., 30 Ga.App. 595, 118 S.E. 583 (1923); Toy v. Olinger, 173 Wis. 277, 181 N.W. 295, 20 A.L.R. 1366 (1921); Adair v. Allen, 18 Ga.App. 636, 89 S.E. 1099 (1916); Lee v. DeForest, 22 Cal.App.2d 351, 71 P.2d 285 (1937); Worth v. Ware, 90 Neb. 443, 133 N.W. 651 (1911). Contra where duty imposed by statute: Keenan v. Flanigan, 157 La. 749, 103 So. 30, 38 A.L.R. 248 (1925).

■ We therefore hold that the landlord had no duty to prevent the improper use of the wall by another tenant. Neither did he assume such a duty by speaking to the other tenant about the problem. This does not leave the tenant powerless to remedy the situation since he has a cause of action against the co-tenant even though the co-tenant may be liable to the common landlord. H. K. Porter Co. v. Halperin, 297 F.2d 442 (7th Cir. 1961); Reid & Sibell, Inc. v. Gilmore & Edwards Co., 134 Cal.App.2d 60, 285 P.2d 364 (1955); Southern Bell Tel. & Tel. Co. v. Yates, 34 Tenn. App. 98, 232 S.W.2d 796 (1950); Martin v. Val-Lo-Will Sherman Co., 337 Ill.App. 166, 85 N.E.2d 358 (1949).

Since we have concluded that the landlord did not breach any of his covenants under the lease, it follows that the tenant was in breach of his covenant to pay rent even if we were to conclude that the covenant to pay rent was dependent upon some covenant of the landlord under the terms of the lease. *See* Bolon v. Pennington, 6 Ariz.App. 308, 432 P.2d 274 (1967). The question then becomes: Did the tenant's good faith belief (which we assume for the purpose of this discussion), that he had a right to set off damages against the rent, prevent his failure to pay the rent from becoming a breach of the lease? We think not. Though our Supreme Court has held that failure to pay rent does not work an automatic forfeiture of the lease and that relief against forfeiture may be granted where failure is due to fraud, accident, or mistake, Thomas v. Given, 75 Ariz. 68, 251 P.2d 887 (1952), such relief will not be granted when the mistake is one of law rather than fact. *Cf.* Steinfeld v. Zeckendorf, 10 Ariz. 221, 86 P. 7 (1906), on rehearing, 11 Ariz. 192, 89 P. 496 (1907). A landlord has a statutory right to terminate a lease upon breach of a material covenant. M. Karam & Sons Mercantile Co. v. Serrano, 51 Ariz. 397, 77 P.2d 447 (1938); *See also* Union Oil Co. of California v. Lindauer, 131 Colo. 138, 280 P.2d 444 (1955).

Being, therefore, in breach of the lease, the tenant's prepaid rent may be retained by the landlord in partial satisfaction of the tenant's obligation under the lease. Loew v. Antonick, 82 Ariz. 204, 310 P.2d 825 (1956); Warming v. Shapiro, 118 Cal.App. 2d 72, 257 P.2d 74 (1953); Brooks v. Coppedge, 71 Idaho 166, 228 P.2d 248, 27 A.L.R.2d 645 (1951); Czech v. Zuromski, 83 R.I. 129, 117 A.2d 431 (1955); 32 Am. Jur. Landlord & Tenant § 875.

The judgment awards the amount of $150 to the landlord as attorneys' fees pursuant to a provision in the lease wherein the defendant agreed to pay such fees in the event of his default. The complaint did not specifically pray for attorneys' fees but did ask for "such other and further relief as to the court seems just." The landlord contends that the court allowed amendment of the complaint during the trial. We find that to be true but that the amendment was specifically as to the amount of rent due and did not relate to attorneys' fees.

Rule 54(d), Rules of Civil Procedure, 16 A.R.S., provides, however, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.*" (emphasis added) *See* Fenter v. Homestead Development & Trust Co., 3 Ariz.App. 248, 413 P.2d 579 (1966).

This leaves the question, may the trial court award such fees without some evidence of the work product of counsel? Though the landlord's counsel offered to put on evidence or to submit the file to the court, it appears to be conceded that he did neither and that the court merely awarded the amount as being reasonable. This is not permissible. Crouch v. Pixler, 83 Ariz. 310, 320 P.2d 943 (1958); Ives v. Lessing, 19 Ariz. 208, 168 P. 506 (1917).

The judgment of the trial court is affirmed except as to that portion awarding $150 for attorneys' fees. As to that, we reverse and remand the cause for further proceedings. Normally, further opportunity to put on evidence would not be given, Shetter v. Rochelle, 2 Ariz.App. 607, 411 P.2d 45 (1966). In view of counsel's attempt to put on evidence and the refusal of the trial court to receive such evidence, it would be unfair to preclude the landlord from establishing the value of attorneys' fees.

MOLLOY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.