[Civ. No. 7775.   Third Dist.   Dec. 6, 1950.]

W. D. INGRAM et al., Respondents, v. CITY OF GRIDLEY
et al., Appellants.

Seth Millington and E. K. Vorhees for Appellants.

Ware & Ware and Charles L. King for Respondents.

VAN DYKE, J.—Plaintiffs, husband and wife, owners of an 85-acre dairy ranch situated about one mile south of the city of Gridley, commenced this action to abate an alleged nuisance caused by waste material and sewage discharged into Morrison Slough which flows through plaintiffs' property. They also sought damages in the sum of $2,500. The cause as to all issues was heard by the court without a jury. The judgment declared that a nuisance exists and has existed and the court retained jurisdiction as to the abatement feature in order to allow the defendants a reasonable time within which to abate the nuisance. Plaintiffs were awarded damages in the sum of $2,500 as prayed for. All three defendants appeal from the whole judgment.

Morrison Slough was found by the court to be a natural watercourse. In 1921 appellant reclamation district was organized to drain lands within its boundaries and in 1922 a rectified channel of Morrison Slough was made the main drainage lateral for the district. Plaintiffs acquired their land in 1944 and the nuisance found to exist had its inception long before. In 1912 the city of Gridley, a city of the sixth class, organized under general municipal law, constructed a sewage disposal plant and after rectification the sewage found its end disposition in a gravel pit just outside the city limits. Appellant, Libby, McNeill and Libby, a corporation, constructed in 1920 a large plant for the canning and processing of fruits and vegetables. The industrial and domestic sewage from this plant was also deposited in the same gravel pit. In 1922 the district tapped the pit by extending a lateral from Morrison Slough. Since that date sewage has gone down the slough. The court found that the draining of this sewage down the slough contaminates the water therein and renders the same stale, stagnant, putrid, malodorous, offensive and poisonous and that there arose and spread over the plaintiffs' lands noxious, offensive, malodorous and putrid odors greatly offensive to the senses, impairing the use and the enjoyment of plaintiffs' property and polluting the soil along the lateral. The court further found that the offensive and foul-smelling air enters buildings and dwellings on plaintiffs' land, is injurious to the health of both persons and animals thereon and that the stagnant water in the lateral is a breeding place for large

numbers of mosquitoes. The court found the nuisance to be a continuing one and that the situation created had become progressively worse as time went by, due in major part, so far as the increase of the nuisance was concerned, to the growth of the city of Gridley. The appellants do not question the court's findings that a nuisance exists and has existed and that as the city grows it becomes worse.

Although appealing from the whole of the judgment, the appellant city states in its briefs that its appeal is concerned only with the monetary judgment. As to this it contends, first, that the award must fall for failure of the plaintiffs to file with the city a claim for the damages they sought. The only statutory provisions respecting the filing of such claims cited and relied upon by the city are sections 1980, 1981 and 1982 of the Government Code, and these sections do not require the filing of such a claim. It was held in *Ansell v. City of San Diego*, 35 Cal.2d 76 [216 P.2d 455], that these sections prescribe rules of procedure for the enforcement of claims against officers and that their purpose was not to lay out procedure for the enforcement of claims against cities. (See, also, *Veriddo v. Renaud*, 35 Cal.2d 263 [217 P.2d 647]; *Glenn v. City of Los Angeles*, 96 Cal.App.2d 86 [214 P.2d 533]; *Dillard v. Kern County*, 23 Cal.2d 271 [144 P.2d 365, 150 A.L.R. 1048]; *Redlands High School Dist. v. Superior Ct.*, 20 Cal.2d 348 [125 P.2d 490].) It has also been held that a charter requirement that claims against a city be filed is not applicable to a suit to abate a nuisance and that failure to allege the presentation of a claim does not prevent the recovery of damages as incidental to the injunction to abate such nuisance. (*Los Angeles Brick etc. Co. v. City of Los Angeles*, 60 Cal.App.2d 478 [141 P.2d 46].) It is not claimed that the city of Gridley has any ordinance requiring the filing of claims.

The appellant reclamation district contends that the entire judgment should be reversed as to it for insufficiency of evidence to support finding or judgment that it in any way contributes to the nuisance. We think this contention cannot be sustained. The gravel pit into which the other appellants had been discharging sewage prior to the organization of the appellant district did not flow down Morrison Slough until the district, in constructing its drains, tapped the pit. It has moved down the slough ever since that time. The evidence shows that when it became apparent that sewage in objectionable quantity and condition was moving down the district's

lateral, the district, finding itself burdened with the necessity of cleaning its lateral by reason of the presence of the sewage, required of the city and the corporation that they bear a part of the cost and this was done for a number of years. ■ With respect to the interrelation between the three appellants in respect of the maintenance and creation of the nuisance found, the court in its findings of fact found that "annually for many years last past said Reclamation District No. 2056 and the City of Gridley acting through its Trustees and defendant, Libby McNeill & Libby have entered into a contract wherein and whereby the said Reclamation District No. 2056, for a consideration allows the said City of Gridley and Libby McNeill & Libby to discharge its sewerage and waste matter into said lateral of said Reclamation District as aforesaid; that the said Reclamation District No. 2056, has accepted compensation from the defendants, City of Gridley and the defendant, Libby McNeill & Libby under an agreement to permit the said last named defendants to discharge their sewerage and waste into said lateral." The foregoing findings support the judgment that appellant district has joined in the creation and maintenance of the nuisance and is liable for its abatement and for damages. ■ We think the findings in turn are supported by the evidence. For instance, the minutes of the board of trustees of the district, under date of January 21, 1935, recited that an agreement had been reached between the trustees and the city council of the city of Gridley that the city should pay the district "as and for the flowage right for the disposal of sewage from the City of Gridley a sum equal to one-third of the average annual cost of the maintenance of the main ditch of Reclamation District No. 2056 from its point of interception with the City of Gridley to a point on the south line of Section 13, Township 17 North, Range 2 East." It was thereupon resolved that the secretary of the district be directed to submit a claim to the city for the sum of $500, the agreed amount "for the services performed by Reclamation District No. 2056, for said City of Gridley for the calendar year of 1934." It appeared that on at least a number of occasions like claims were presented to the city. As hereinbefore stated, the district had tapped the gravel pit into which the sewage had theretofore been spilled and into which it continued to be spilled, thus permitting the sewage to pass down the channel of the old watercourse, which had become a main lateral drain maintained and operated by the district. [4] It is true that the district itself, as claimed by it, contributed no

material that would add to the nuisance-creating sewage, but the effect of its acts as related was to make it a joint tort feasor with the other appellants in the creation and the continuance of the nuisance.

Appellant Libby, McNeil and Libby contend that by reason of rectification equipment and processes used by them they were not sending into the district lateral any offensive matter. Upon this point the evidence was conflicting and we must accept the factual finding of the court that the corporation's claim in this respect is not true.

All of the appellants contend that the award of damages was erroneous. In discussing these contentions we think it appropriate to discuss generally the subject of damages allowable in a suit for the abatement of a continuing nuisance. Insofar as the damages consisted of injury to the real property of respondents, it is given as a general rule in 39 American Jurisprudence 395 et seq., that:

"The measure of damages in cases of injury to real property from a nuisance is different according as the nuisance is temporary or permanent. If the nuisance arises from the manner of operation, damages should be only for the injury caused by such operation. The true measure of damages for a nuisance is compensation for the loss or injury sustained, which is usually held to be the depreciation in the market or usable or rental value of the property, together with such special damages as may be proved. In estimating damages, the law will not undertake to balance conveniences or estimate the difference between the injuries sustained by the plaintiff and loss which may result to the defendant from having his business declared a nuisance."

It is also stated:

"Damages for permanent injury to land may be recovered even though the continuation of the nuisance is abated.

. . . . . . . . . . . . . .

"As a general rule, where the injury to real property caused by a nuisance is of a permanent character, the damages are measured by the depreciation in the market value of the property injured."

We may say here that there was no evidence of depreciation in the market value of the property of respondents in the sense that any witness testified as to the value of that property when they bought and as of the time of beginning the action or the trial thereof. The text continues:

". . . Thus, if the property will sell for as much as before, for any purpose, there is no loss in value for which recovery

can be had although it is worth less as a home. . . . Loss of rental value is not a part of the damages recoverable where there was permanent injury to the land itself. But where the property is not directly affected or depreciated by physical injury, but the value of its use only is affected, it has been held that the measure of damages is the depreciation in the rental value of the property.''

We may say further that there was no witness who testified that there was depreciation in the rental value of the property. All that we have in the record is testimony of respondent W. D. Ingram that the value of his land had decreased by reason of the nuisance, but not as to how much. And he said that the condition of the nuisance was the same at the time of trial as it had been when he bought; that there had been no change from the time he bought it down to the date of trial; although he said that he bought the land with the suggestion that the nuisance was going to be cleaned up, he admitted that ''the purchase was made with knowledge'' on his part that the nuisance existed. He said the nuisance had continued up to the time of trial without change. However, ''Recovery is not limited to the damages to plaintiff's property and its rental value.'' (39 Am.Jur. 398.) That text continues:

██ ''The owner of a residence or dwelling house occupied by him as a home is entitled to just compensation for annoyance, discomfort, and inconvenience caused by a nuisance on adjoining property. In addition to depreciation in the market or rental or usable value of the realty, the plaintiff may recover the damages he himself suffers from deprivation of the comfortable enjoyment of the property, and the inconvenience and discomfort suffered by himself and his family, including injury to health, expenses incurred by reason of illness caused by the nuisance, loss of consortium, and such other special damages as may be proved.'' ██ Upon this subject both the pleadings and the proof sustained a claim for the type of damage last above referred to. The record is clear that the comfortable enjoyment and use of the property was markedly interfered with and that plaintiffs in the use thereof did suffer inconvenience and discomfort by reason of the conditions created by the nuisance. It is true that the plaintiffs did not live upon the property, but they were in the constant use of it in association with one Mr. Hale, a partner in the operation of the dairy. It was shown that the dairy was one for the production of high-grade milk and the raising of high-grade Guernsey cattle; that the offensive odors from

the drain penetrated the dairy buildings and affected the flavor quality of the milk produced, bringing down upon the plaintiffs and their partner recurring official threats that unless the conditions were remedied their right to maintain such a dairy would be prohibited. It was shown that the concentration of odors at times, as compared with other times, was immediately reflected in the lowering of the flavor rating of the milk produced. At such times of concentrated odors, just being upon the property was objectionable to the point that persons who did not need to go there, as, for instance, guests of the partner, who lived upon the property, would remain away rather than suffer the noisome stench. It was said by our Supreme Court in *Dauberman* v. *Grant*, 198 Cal. 586, 590 [246 P. 319, 48 A.L.R. 1244] : .

". . . The maintenance of a smoke-stack at such a low height as to permit the pollution of the air of the plaintiff's premises and thereby interfere with the comfortable enjoyment of the same when such pollution and interference could be avoided and obviated by the simple expedient of increasing the height of the smoke-stack, was sufficient to constitute a nuisance and the trial court was correct in so finding.

"It was not necessary to the recovery of damages caused by the nuisance of smoke and soot to prove actual damage to plaintiff's property. She was entitled to recover for the personal discomfort and annoyance to which she had been subjected and it was a question for the trial court to determine the amount of the compensation which she should receive. (*Judson* v. *Los Angeles Suburban Gas Co.* [157 Cal. 168 (106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A. N.S. 183)], *supra*.)"

▮ There is, therefore, in this record an adequate foundation laid for a claim of damages of the type we have been discussing and no opinion evidence as to the amount of such damage in dollars and cents was necessary to recover such damage. In *Green* v. *General Petroleum Corp.*, 205 Cal. 328, 337 [270 P. 952, 60 A.L.R. 475], the court said:

". . . We must assume that the trial court allocated the full amount of the damages awarded for the eviction as compensation for the physical discomforts suffered by the respondents, and for the deprivation of the use and comforts of their home. The amount of money necessary to compensate the plaintiffs in such cases is not to be estimated by witnesses or the 'actual amount' established by testimony or calculated by any arithmetical rule. It must be left to the sound judg-

ment, experience and discretion of court or jury to fix the amount in view of the facts in each particular case.''

In *Griffin* v. *Northridge*, 67 Cal.App.2d 69, 76 [153 P.2d 800], an action to abate a nuisance and to recover damages, an award had been made for damages of the type we are discussing. The court said:

"The judgment is not excessive. For the personal discomfort and annoyance to which a person has been subjected by a nuisance on adjoining property, the determination of the amount of his compensation is a question for the trial court. (*Dauberman* v. *Grant* [198 Cal. 586], *supra*, p. 590.)''

The type of damage with which we are here concerned is like that claimed by the plaintiff in a personal injury action. In *Clare* v. *Sacramento Elec. P. & L. Co.*, 122 Cal. 504, 506 [55 P. 326], in discussing this type of damage and the type of evidence requisite to the affirmance of an award, the court said:

". . . There is no standard by which the value of an eye, or of an ear, or of a limb can be computed, or which will determine the amount of money which will compensate a person for the loss or impairment of one of his senses. . . . In cases of this character, there can be no direct evidence of the amount of damage sustained, or the amount of money which will be a compensation for the injury, but it is sufficient to show to the jury the extent of the injury, and the amount of their verdict thereon is to be determined by the exercise of an intelligent discretion; and, unless the amount of the verdict is such as to indicate that it was given under passion or prejudice, it will be sustained.''

■ It cannot be said that there was not evidence to sustain an award of damages in this case and when that conclusion is reached the only objection that can be raised is as to whether or not the award is excessive within the rule announced in the case last cited. ■ We conclude that this court cannot say from the record here that the damages awarded were excessive.

■ But it is also contended that no award of damages could be given against the appellants because the damages were not apportioned, the appellants claiming that damages in a case such as this must be apportioned among the creators of the nuisance and if that cannot, from the nature of the case, be done, damages cannot be awarded jointly against all. We think this contention likewise cannot be sustained. The record here reveals that each of the appellants, with full

knowledge of the acts of the others, and in the face of repeated requests for a cessation of the acts which created the nuisance, continued to act and by their acts to create the nuisance complained of and treated with each other concerning the matter to such an extent that they should be held to be joint tort feasors, each liable for the full damage. The subject of joint and several liability among tort feasors is discussed with clarity and force in the recent case of *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. While that was a hunting accident case, the general principles involved are the same as must control here. The court quotes with approval Wigmore, Select Cases on the Law of Torts, section 153, as follows:

" 'The real reason for the rule that each joint tortfeasor is responsible for the whole damage is the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each did, when it is certain that between them they did all; let them be the ones to apportion it among themselves. Since, then, the difficulty of proof is the reason, the rule should apply whenever the harm has plural causes, and not merely when they acted in conscious concert. . . .' "

Here the acts of the appellants constituted plural causes. Further the appellants acted in concert, the district by making its drain available to the flow of sewage, the corporation and the city by contributing the obnoxious matter, and all by sharing expense of drain maintenance, so that the result of the combined action was the draining of the sewage onto and through the respondents' farm. It was only by the combined and concurrent acts of the three, each acting with knowledge of the action of the other and of the cumulative result, that the nuisance complained of could and did arise. Under such circumstances we think it was proper for the court to hold the appellants jointly and severally liable.

One further contention of appellants has not been discussed. That has to do with the claimed waiver or abandonment of damages, said to have taken place at the trial of the action. The following occurred: Respondent W. D. Ingram had testified as to the existence and extent of the nuisance, including its effect in depriving plaintiffs of the comfortable use and enjoyment of their property. This and like testimony is, as we have seen, the evidentiary support for the damage award. Under cross-examination, questions were asked concerning the nuisance having existed when he bought the

property. An objection was made that such matters were immaterial. Counsel for the appellants stated that, aside from the right to injunction, they were asking for damages and the questions being asked had a direct bearing upon that subject. The following then occurred: "The Court: Is this cross examination? The witness hasn't testified to anything about damages." In this evaluation of the preceding testimony we think the court was wrong. As to the type of damages we have held to be recoverable here, the testimony had been full as to the existence and extent of the injury and the question of amount was then left to the discretion of the court; so there had been testimony applicable to damages. Continuing to quote from the record, we find the following: "Mr. Millington: He told you he bought the property in 1944 and laid the ground for it. The Court: He hasn't testified that he has been damaged. Mr. Millington: They are waiving damages? The Court: I don't know if they are or not, I am talking about cross examination of this witness, he has not testified to any damages in the matter, in the matter of depreciation by which damages may be measured, he hasn't even gone so far as to say he has been damaged. Mr. Millington: It is understood, then, as to their application for damages and equitable relief they are waiving damages or that the witness is precluded from answering that question, but later on if there are other witnesses I will have the right to recall this witness to go into that? The Court: You may do that. Mr. Millington: Q. Now you say on that ranch—Let's get this straight, are you waiving any claim for damages? Mr. Ware: We don't expect to be able to prove any damage due to the fact, not that he hasn't been damaged, but when you have three defendants this way, as I understand the rule of law, you have to prove how much of malodorous and offensive smells were emanating from one and how much from the other, and I don't know how to develop it, it is just there. Mr. Millington: I disagree with counsel on that rule. If he waives damages, I am not going ahead on it. If you are waiving the amount of damage and asking for equitable relief only, we can dispose of a lot of this case right now. Mr. Ware: I don't expect to be able to prove any damage, if that isn't the law—— Mr. Millington: (Int.) I am just assuming you are not attempting to prove any damages and with that understanding—— The Court: You may have the right to go into the matter of damages if it develops." Immediately thereafter counsel for the appellants continued

with the cross-examination touching upon the existence and extent of the nuisance, such as the deposit of spoil from the drain upon the respondents' land, the condition of the sludge as to viscosity and how far out upon the land it spread, and then counsel for the appellants said: ''I don't think I have any questions upon the element of damages—oh, there is one more question. Q. Up to date you have not been damaged in terms of dollars and cents one single penny, have you? A. If I tried to subdivide that ranch I couldn't give it away. Q. I am saying, up to date you haven't been damaged one single penny? Mr. Ware: That isn't cross examination and we object to it. Mr. Millington: I think it is, he talked about his Grade A dairy. The Court: It isn't cross examination, it calls for the conclusion of the witness and even if you were trying to prove damages you couldn't prove it that way. . . . Mr. Millington: I understand that, and I am not trying to prove damages. . . . Mr. Millington: The witness made no attempt to prove damage and I assume that is conclusive and I will not pursue that any further.''

Later in the trial respondent Ingram was again on the stand and the following occurred: ''Mr. Ware: Q. Will you state whether or not, in your opinion, the value of your ranch has been greatly decreased due to the fact that the sewage has been and is being conducted through Morrison Slough?'' Mr. Millington objected, saying among other things: ''Yesterday you practically stipulated that you are abandoning the damages. Mr. Ware: I don't think we abandoned the claim he had been injured, I did state I didn't believe under the law, where we could not segregate the amount of mischief produced by each of the two defendants, you can get a blanket judgment against them both, that is my understanding of the law of damages.'' The court then permitted the witness to testify on the subject of depreciation in value, without stating the amount.

It is apparent that there was some confusion during the trial of the cause as to the right to recover and the extent of recovery for damages and as to whether the liability was several or joint, but on the whole we do not think it can be said that there was a waiver of the right of damages. After the close of the trial, findings of fact and conclusions of law were prepared by counsel for the respondents, under direction of the court, which included the finding and award of damages and as prepared were served upon counsel for the appellants on April 26th, and the same were not filed as signed by the

court until one month later. It does not appear that the claim here advanced was then advanced to the trial court. No motion for new trial or for reopening upon the issue of damages was made. In addition to this lack of presentation of the contentions here advanced to the trial court before or after the entry of the judgment appealed from, the nature of the damage allowed which we have hereinbefore discussed must be borne in mind, and in this respect it is pertinent that no contention is made here, and none was made in the trial court, that the nuisance did not exist and that the interference with and deprivation of the comfortable use and enjoyment of the property had not occurred. Thus there is no issue as to the nature and extent of the injury and, since no testimony as to the amount of such damage in dollars and cents was either admissible or necessary, it is difficult to see how appellants were injured if they did in fact assume that damages had been waived. Certainly there was no clear waiver of that issue. For the reasons we have given, we cannot sustain appellants' contentions regarding damages.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied January 4, 1951, and appellants' petition for a hearing by the Supreme Court was denied February 1, 1951.