[Civ. No. 8009. Third Dist. Mar. 4, 1952.]

THE LOST KEY MINES, INC. (a Corporation), Plaintiff and Appellant, v. TOLBERT HAMILTON et al., Defendants.

JOSIE GOODWIN, Intervener and Respondent, v. THE LOST KEY MINES, INC. (a Corporation) et al., Appellants.

Anderson & Peck for Appellants.

St. Sure & Moore and Jesse M. Zimmerman for Intervener and Respondent.

VAN DYKE, J.—In this action plaintiff, The Lost Key Mines, Inc., a corporation, brought suit against certain defendants, seeking to quiet title against the claims of said defendants in respect to certain real property in Tuolumne

County. It based its claims upon a mining lease. Josie Goodwin, respondent herein and admitted owner of the real property, filed a complaint in intervention against The Lost Key Mines, Inc., which we shall hereafter refer to as "Lost Key," against Gold Pan Consolidated, a corporation, hereafter referred to as "Gold Pan," and against other defendants, in which she sought to quiet her title as against the claims of Lost Key, Gold Pan and others. The trial court gave its judgment quieting title in respondent Josie Goodwin and from that judgment Gold Pan has appealed.

We shall state the facts in accordance with the rule that all intendments are in favor of the judgment given and that all conflicts in testimony are resolved in respondent's favor. On July 30, 1946, respondent leased the subject property to Lost Key under a contract giving it the right to mine the property for an undetermined length of time in return for royalty payments. The lease was in the usual form of mining leases. Lost Key went into possession, installed mining machinery upon the property and commenced mining. Its operations continued for a period and then halted. In August, 1947, those interested in the lessee's affairs fell into dispute concerning its operations and two factions developed. Leading one faction were a Mr. Hamilton and a Mr. Potter. They negotiated with respondent concerning the resumption of mining operations on the property. Lost Key was a Nevada corporation. Hamilton and Potter, who were president and vice-president respectively thereof, had been informed by the California Commissioner of Corporations that if it was desired to sell stock in the venture in California it would be required that a California corporation be formed and a lease given to it. Such a corporation was formed under the name of Gold Pan Consolidated. Just prior to its formation Lost Key executed a quitclaim deed of the property under lease to it, in favor of respondent Goodwin, and thereafter, and upon incorporation of Gold Pan, respondent Goodwin executed a lease to the new corporation, giving it mining rights equivalent to those that had been given by the first lease to Lost Key. By her complaint in intervention respondent claimed this lease also had terminated. Apparently challenging the validity of the corporate action of Lost Key in executing the quitclaim deed, certain parties remained in physical possession of the property and when appellant Gold Pan attempted to take possession under its lease, they were successful in forcibly

resisting the attempt. These people, purporting to act for Lost Key, were instrumental in causing it to file the action hereinbefore referred to. When the case came on for trial plaintiff Lost Key did not appear. Appellant Gold Pan did appear and sought to establish its rights as a lessee under the lease given to it. So far as material here, therefore, the trial was confined to the contest between respondent and Gold Pan. As to these issues so tried the trial court found as follows: That respondent was the owner of the real property and entitled to the exclusive possession thereof; that by the quitclaim deed the rights of Lost Key as lessee or otherwise in the real property terminated; that thereafter respondent had leased the property to appellant Gold Pan; that Gold Pan defaulted in its obligations in that it failed to start mining work immediately as required by the lease or at any time, failed to pay royalties to respondent, failed to pay minimum payments fixed by the lease to respondent, and failed to post notices of nonresponsibility on the property, in all of which respects it was obligated by its lease; that at no time had it either been ready or able to perform its obligations under the lease; that the lease provided that upon breach by appellant the respondent could record a notice stating that the lease was at an end and if she did so, and Gold Pan did not within 10 days after such recording commence an action in the Superior Court of Tuolumne County denying the notice of default, then the record should "stand clear of this agreement the same as if it had never been executed"; that such notice of default had been recorded and the stipulated action had not been commenced within the time allowed; that by reason of said defaults, the inability of Gold Pan to perform its obligations, the recording of the notice of defaults and the failure of Gold Pan to commence the stipulated action, the lease was at an end.

Appellant contends that the evidence does not support the findings as to its defaults. In support of this assignment appellant first contends that the defaults found to have existed in respect of its performance of its obligations under the lease were excused by the terms of the lease itself. Appellant refers to a paragraph in the lease which provides that if defaults were "occasioned by act of God or other cause beyond the control of the party of the second part [the lessee] then in that event such failure or default shall be deemed waived" by the lessor. The argument is that from the evidence the physical possession of the leased prem-

ises by persons claiming under the lease to Lost Key constituted circumstances beyond the control of Gold Pan. ▮ It appears that when the property was leased to appellant in 1947 physical possession was forcibly maintained by the recalcitrant faction of Lost Key, the force going so far as to include threats of gunfire; that respondent and appellant cooperated in attempts to remove these people from the property and that an injunction was issued in the original cause, enjoining the plaintiff therein, Lost Key, its officers and agents from in anywise interfering with or obstructing respondent in the use and enjoyment of the property. Notwithstanding this order, at least one of the resisting group refused to depart. However, no proceedings were taken to enforce the injunctive order through contempt proceedings and appellant made no further attempt to obtain possession, even though the area held by the resisters was only a few acres out of nearly 200 acres of property under its lease. This failure to act was undoubtedly considered by the trial court to be explained by the evidence that appellant had never obtained a permit to sell its stock and had been without assets from the time of its creation. It had never issued stock, had no money, owned no machinery and the court was justified in concluding that, having obtained its lease, its real reason for inaction over a long period of time was its own inability to proceed with corporate financing to a point where it could go forward. It was not denied that respondent, claiming defaults had occurred, recorded notice of termination of the lease and that appellant filed no action contesting her action. All of this supports the court's findings that appellant was in default and the implied finding that the causes of its defaults were not causes beyond its control. ▮ Whether or not the causes of default were circumstances beyond its control were questions of fact under the circumstances shown by this record and the trial court's findings against the appellant are conclusive here, since they are adequately supported.

▮ Appellant next contends that any default of which it might have been guilty was excused because respondent had been guilty of breaching the implied covenant of quiet enjoyment. Appellant refers to Civil Code, section 1927, which provides that an agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired for the term of the hiring, against all persons lawfully claiming the same. But this covenant of quiet en-

joyment on the part of the lessor means that the "tenant shall not be evicted or disturbed by the lessor or by persons deriving title from him, or by virtue of a title paramount to his, and implies no warranty against the acts of strangers. It is equivalent to a stipulation that the lessee shall not be rightfully disturbed in his possession during the term, not that he shall not be disturbed at all." (*McDowell* v. *Hyman,* 117 Cal. 67, 70-71 [48 P. 984], citing 1 Taylor on Landlord and Tenant, § 305.) It appears from the record that the persons resisting the possession of appellant were strangers to the title. Insofar as they claimed under Lost Key and its lease, such claims were terminated by the quitclaim deed which Lost Key executed to respondent. Appellant does not even claim that this quitclaim was not the valid act of Lost Key, and consequently those who purportedly claimed under Lost Key were strangers to the title. Whatever effect their resistance may have had, the covenant was not broken by respondent, and appellant's redress was against the wrongdoers. (*McDowell* v. *Hyman, supra.*)

Next appellant contends that its performance was excused by the acts of the resisters which prevented their fulfilling their contract. Assuming that such acts might under certain circumstances amount to prevention of fulfillment by an adverse party (*City of Alturas* v. *Gloster,* 16 Cal.2d 46, 49 [104 P.2d 810]), the contention here presents nothing but an issue of fact as to which the trial court has impliedly found against appellant. What we have already said demonstrates that this finding is supported by the evidence. But in addition to all that there was evidence that while the resisters were on the property when appellant, having obtained its lease, first sought to take possession, all departed after the injunctive order was obtained save one who, under order of court, remained to guard certain mining equipment that had been placed upon the property by Lost Key. The area thus occupied was but a few acres in extent, and there was nothing to show that occupation of this small area in any way prevented performance of its lease obligations by appellant.

Finally, appellant contends that it had a valid lease to the property; that it was the rightful successor to all of the assets of Lost Key, which included some $65,000 worth of mining equipment placed by Lost Key upon the subject property and that as a result of the judgment quieting title in respondent its leasehold has been forfeited and further it

has been deprived of all interest in the mining equipment which, by reason of section 2601 of the Public Resources Code, had become affixed to the mine and therefore passed with the decree quieting the land to respondent to her unjust enrichment. It is sufficient reply to this contention to say that the record does not support it. There was no allegation along these lines in the pleadings nor any evidence from which it could be found that the mining equipment had become a part of the real property by the terms of the code section referred to and the court made no finding upon the matter. The record shows that findings as filed were served and no objections made that they were insufficient. Under these circumstances the contention made has no merit on appeal.

The judgment is affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.