[Civ. No. 5375. Fourth Dist. Feb. 21, 1957.]

CLARA QUALLS, Appellant, v. GEORGE SMYTH, Respondent.

James Snedeker for Appellant.

Lerrigo, Thuesen, Thompson & Thompson for Respondent.

BARNARD, P. J.—This is an action for an injunction and for damages. It was brought by the plaintiff Qualls, the plaintiffs Hurley and the plaintiffs Marshall to abate a dust nuisance arising from the defendant's operation of a turkey ranch. The general area involved is one of large ranches, in the foothills, devoted to the grazing of cattle and dry farming. In 1953, the defendant leased a portion of a 1,300-acre ranch, constructed pens containing about an acre and a half each, and engaged in the business of raising turkeys for market. He operated this ranch during the seasons of 1953, 1954 and 1955, having about 34,000 turkeys each year. The turkey season ran from about July 1 to the middle of November of each year, when the turkeys were sold.

The plaintiffs Marshall lived about one-eighth of a mile southerly, and the plaintiffs Hurley about one-quarter of a mile southerly, from the defendant's turkey pens. The plaintiff Qualls occupied a store building and living quarters about three-quarters of a mile southerly from these pens. This action was brought in August, 1955, and was tried on November 3, 1955. The complaint alleged that each night and morning, at feeding time, these turkeys by scratching and flapping their wings would cause clouds of dust to rise, which dust was carried by the wind to plaintiffs' premises; that the defendant was negligent in failing to employ reasonable means of preventing this dust; and that this caused damage to the plaintiffs by depreciating the value of their properties and by interfering with their comfortable enjoyment of their dwellings. The court found that the defendant conducted this turkey raising operation for about four months out of each year, from July 1st to November 1st; that during said four months' period he conducted the operation in a negligent manner in that he failed to employ reasonable methods to prevent clouds of dust from rising and being carried to the plaintiffs' premises; and that it was not true that the value of the plaintiffs' properties had been decreased. It was further found that by such unlawful nuisance the plaintiff Qualls had been damaged in the sum of $250 because of interference with her enjoyment of her property; that the plaintiffs Hurley had been thus damaged in the sum of $250; and that the plaintiffs Marshall had been likewise damaged

in the sum of $500. A judgment was entered awarding the plaintiffs these amounts, respectively, and enjoining the defendant from so conducting his turkey raising operations as to cause offensive dust or odors to come upon the premises of the plaintiffs. It was further ordered that if the defendant should desire to experiment during the turkey raising season of 1956, with a view to so abating this nuisance as to give no further offense to the plaintiffs, the court would permit such operations but would retain jurisdiction to make further orders if such methods did not prove satisfactory.

The plaintiff Qualls alone has appealed from those portions of this judgment which awarded her $250 as damages, and which permitted the defendant to attempt to remedy the condition during the 1956 turkey raising season. It is argued that this permission to experiment during the 1956 season is inconsistent with the purpose of the restraining order; that this provision in effect deprives this appellant of the relief to which she was entitled under the facts found; and that under the law the court was not justified in doing this. It is further argued that the damages of $250 awarded her was clearly inadequate, since she "had endured the dust and stench for two and a quarter years before the trial," and that this court should modify the judgment by increasing the award. In an affidavit supporting a request for an early hearing she stated that the main basis of her appeal is that the court abused its discretion in permitting the respondent to continue his operations during the 1956 season. At the oral hearing of the cause it was stipulated that this point is now moot since the respondent ceased his operations in that area, and that the only remaining question is as to the inadequacy of the amount awarded this appellant for damages.

The appellant admits that "there was little evidence on the value of damages sustained," and the trial court stated at the conclusion of the case that "the proof respecting the damage phase of the matter is not very satisfactory." There was no satisfactory evidence of any property damage. Since the nuisance was temporary in nature, being for only a few months at a time, the measure of damage involved was the depreciation of the rental or use value of the property, and there was no evidence at all as to that element. As to the element of personal discomfort and annoyance, the evidence was not only unsatisfactory but was conflicting. While the record indicates that there was some discomfort and annoyance to the appellant at times, much of the evidence

in her behalf appears so obviously exaggerated as to seriously affect its credibility. There is a marked difference between some of that evidence, as to unbearable conditions for several hours each morning and evening on practically every day during three seasons, and the testimony of the appellant's sister who lived with her most of the time in question. The sister testified that she lived there continuously from August 1, 1953, to August 1, 1955; that the man who had lived there and ran the store prior to August 1, 1953, had made no complaint to them about the dust; that around July, 1955, she noticed something "unusual" in that "there was turkey dust"; that she noticed this dust when she went outside at 6:30 in the mornings; that the dust was thick "lots of times"; that it would depend largely on the breeze; that the dust would be heavy three or four times a week; that it would last an hour or an hour and a half in the mornings; that she could see dust on things outside; that in the evenings she would not know the dust was rising "unless I was out"; that "if I was outside I could see the dust was rising and coming our way"; and that at times she could smell it inside the house. Several witnesses for the respondent testified that they were in or about the appellant's premises frequently, and that they saw no dust or that they saw a little dust around on a few occasions. There was also evidence that some of the dust around appellant's premises was caused by travel on the road, and that the amount of dust had decreased after the respondent began his sprinkling operations at the beginning of the 1954 season. These properties were in an area in which the zone regulations permitted turkey raising, and the health authorities had investigated the complaints made and had found no necessity for action.

There was no evidence of a definite amount of damage suffered, and it was the province of the trial court to weigh the conflicting evidence. A reading of the record indicates that the judge evaluated the evidence remarkably well, and that the amount awarded this appellant is about as close to a proper amount as could be expected from any impartial trier of fact. Incidentally, the other plaintiffs were much nearer to the worst part of the dust than was the appellant and were more seriously damaged, and they have accepted the court's decision.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.