[Civ. No. 20418. Third Dist. Oct. 6, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNA MASON et al., Defendants and Appellants.

Counsel

Charles Elwyn Karpinski and Peter E. Tracy for Defendants and Appellants.

N. Edward Denton, District Attorney, for Plaintiff and Respondent.

Opinion

REYNOSO, J.—Defendants appeal from a judgment entered (1) finding they were operating their business in such a manner as to constitute a public nuisance, and (2) permanently enjoining them from permitting music and related noise to be audible anywhere beyond the boundaries of their property. On appeal, defendants challenge the standing of the People to bring the instant action, the sufficiency of the evidence to support the finding that a nuisance was created, and the terms of the injunction as vague and overbroad.

The most serious issue is that of overbreadth as the defendants were enjoined from permitting noise "audible anywhere" in the neighborhood or beyond appellants' property boundaries. As will be seen, we reject

each of appellants' contentions, except that of overbreadth. Accordingly, we reverse and remand.

## I

In May 1980, the People filed a complaint for injunctive relief, alleging defendants were conducting their restaurant and bar business (hereafter the Lodge) in a loud, noisy, and unreasonable manner so as to constitute a public nuisance. Specifically, the complaint alleged defendants were permitting the use of sound amplifying equipment in such a fashion as to disturb the residents living close to the Lodge, and that the noise created by music, hand clapping and foot stomping "has greatly impaired the enjoyment of these premises as dwelling houses and has caused great nervous distress and loss of sleep which endangers the health, comfort and peace of the residents in the area."

Evidence presented at trial indicated the Lodge is contiguous to a rural residential area known as the Paradise Estates, which consists of approximately 33 homes which were built around 1970. For more than 30 years, the Lodge has provided both live and juke-box music for its patrons. Depending on the time of year, the live music is played either inside the Lodge or outside on a deck.

Various residents of the subdivision testified on behalf of the People. The testimony of each resident was consistent to the extent the loud music, hand clapping, foot stomping and vibration emanating from the Lodge interfered with the use and enjoyment of their premises, particularly with their ability to sleep. Moreover, the residents testified the noise was so loud that closing windows and doors did not have an appreciable effect on reducing the level of sound. The testimony concerning the loud noise was corroborated by sheriffs' officers who, upon entering the residents' homes for the purpose of receiving complaints about the noise, were able to hear the noise coming from the Lodge. The music is apparently played every weekend, beginning around 9 p.m., and continuing as late as 1:30-2 a.m. Further testimony indicated the residents' complaints, relayed to defendants, were of no avail.

Following the conclusion of the trial, the court entered the following findings of fact: "Defendants have caused and permitted said amplified music, foot stomping and [hand] clapping to occur between the hours of 8:30 p.m. and 2:00 a.m. on Fridays, Saturdays and Sundays.

"...............

"The residents of Paradise Estates, as a result of the loud and offensive noise from Paradise Lodge, have had to change their sleeping quarters; wear earplugs; suffer from loss of sleep; not use patio and deck area and incur emotional discomfort.

"Paradise Estates has between thirty and forty homes, all or most of which are occupied and are all, to a substantial extent, affected by the noise and music created or permitted by the defendants.

"The amplified music, foot stomping and hand clapping permitted and caused by defendants is injurious to health, offensive to the senses and is an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property by the residents of Paradise Estates.

"The amplified music, foot stomping and hand clapping permitted and caused by defendants creates discomfort and annoyance to reasonable persons of normal sensitiveness and endangers the comfort, repose, health and peace of the residents of Paradise Estates."

The specific language of the judgment permanently enjoins defendants from: (1) "Amplifying musical instruments and vocal selections to the extent that the resulting music, singing and other noise so amplified can be audible anywhere in the neighborhood knows [*sic*] as Paradise Estates or in any other place beyond the boundaries of the property owned or operated by defendants, excepting only public streets and roads." (2) "Playing records, tapes and other recordings at a volume and so loud that the music and noise thereof is *audible anywhere in the neighborhood* ...." (3) "Permitting or allowing applause, feet stomping and other noise, originating from or generated by patrons, guests and audiences gathered upon said premises known as PARADISE LODGE, to be *audible anywhere in the neighborhood* ...." (Italics added.)

## II

█ Defendants argue the People lack standing to bring the present action. As a basis for this assertion, defendants contend their conduct can in no manner be considered a public nuisance. We disagree. A public nuisance, for which a civil action to abate may be brought by the People, is one which affects at the same time an entire community or

neighborhood, or any considerable number of persons, even though the extent of the annoyance or damage inflicted upon individuals may be unequal. (Civ. Code, § 3480; see Code Civ. Proc., § 731.) In *Wade* v. *Campbell* (1962) 200 Cal.App.2d 54, 59 [19 Cal.Rptr. 173, 92 A.L.R. 2d 966], it was held that 11 people owning 12 1/2 lots in a 51-lot tract constituted a considerable number of persons in the neighborhood for purposes of establishing a public nuisance. Here, fewer residents were actually involved in initiating the action, but there are also fewer lots in the affected subdivision. Moreover, Civil Code section 3480 provides a public nuisance is one which *affects* any considerable number of persons. Thus, the section is not nearly as concerned with the number of people who actually complain, but rather with those who are in some manner affected by the defendants' conduct.

Three of the residents who complained of the noise live approximately 600-800 feet away from the Lodge. Another resident who testified also lives about 600-800 feet away from the Lodge, but in the opposite direction. Based on the difference in location between the complaining residents, a reasonable inference can be drawn that other homes in the subdivision were also affected by the noise. The People thus have standing to bring the instant action.

Further, the evidence presented was sufficient to support the finding that a public nuisance was created. "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to free use of property, so as to interfere with the comfortable enjoyment of life or property, ... is a nuisance." (Civ. Code, § 3479.) Residents of the subdivision testified about the noise emanating from the Lodge, causing these homeowners extreme discomfort and annoyance. The level of sound not only had an impact on the residents' ability to use their outdoor facilities, but also significantly affected their ability to sleep. The residents testified to being kept awake until the time the music would terminate, which often was as late as 2 a.m. Indeed, some of the residents moved to other areas of their homes in an effort to find a quieter place to sleep. The court's determination that the amplified music, foot stomping and hand clapping creates discomfort and obstructs the free use of property so as to interfere with the comfortable enjoyment of life and property is supported by the evidence.

■ Notwithstanding the affirmance of the trial court's finding that the defendants' music and related activities (foot stomping, hand clapping, etc.), did constitute a nuisance, we agree with defendants that the

injunction is too broad in restraining them from allowing the noise to be audible outside the boundaries of their property or anywhere in the subdivision save and except the public streets. The respondents conceded at oral argument that an audible level of noise is not necessarily a nuisance. We conclude that the injunction should have been worded so as to permit some noise to be audible, save and except that which unreasonably interferes with the residents' use and enjoyment of their property.

Because defendants' business is not a nuisance per se, it was important for the trial court to limit the scope of the injunction, taking only those measures which would afford the People the relief to which they are entitled. (*Morton* v. *Superior Court* (1954) 124 Cal.App.2d 577, 582 [269 P.2d 81, 47 A.L.R.2d 478]; see *Anderson* v. *Souza* (1952) 38 Cal.2d 825, 841 [243 P.2d 497].) In this regard, the law is clear that injunctions against carrying on a legitimate business should go no further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction. (*Morton* v. *Superior Court,* *supra*; *Anderson* v. *Souza, supra.*)

The infirmity of the present injunction is that it ignores the question of actual injury and is framed to cover even the slightest musical or related sound which can be heard beyond the boundaries of defendants' property regardless of whether such noise causes any injury to the nearby residents. (Cf. *Thompson* v. *Kraft Cheese Co.* (1930) 210 Cal. 171, 176 [291 P. 204].) Noise emanating from the premises is not to be considered a nuisance merely because it may be faintly audible somewhere within the subdivision. Since the injunction is overbroad the decree must thus be modified; it may proscribe the doing only of those acts which are calculated to cause injury to the residents of the subdivision. (*Id.,* at p. 180; cf. *Stoddard* v. *Rosen Talking Mach. Co.* (1922) 241 Mass. 245 [135 N.E. 251, 22 A.L.R. 1197].)

The judgment is reversed with directions to the trial court to modify the terms of the injunction consistent with the opinion we express herein.

Puglia, P. J., and Carr, J., concurred.