**Ruth E. OSCAR; Charles Spinosa,
Plaintiffs–Appellants,**

v.

**UNIVERSITY STUDENTS CO–OPERA-
TIVE ASSOCIATION, George Proper,
et al., Defendants–Appellees.**

No. 90–15750.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1991.

Decided July 26, 1991.

As Amended Oct. 29, 1991.

Donald P. Driscoll, San Francisco, Cal., for plaintiffs-appellants.

Arthur Brunwasser, San Francisco, Cal., for defendants-appellees.

Before BRUNETTI, KOZINSKI and RYMER, Circuit Judges.

KOZINSKI, Circuit Judge.

If Berkeley, California, was the last bastion of sixties counterculture, Barrington Hall, the city's oldest and largest student housing co-operative, was surely the last rampart. While much of Berkeley became stuffy and conventional, the residents of Barrington Hall clung to their freewheeling ways. A bit too freewheeling, according to two of Barrington's neighbors. They claim that the co-op's denizens engaged in massive drug-law violations, turning the neighborhood into a drug-enterprise zone. This, they allege, interfered with the use and enjoyment of their property. We consider whether they state a claim under RICO, 18 U.S.C. §§ 1961–1968.[1]

### Facts

Barrington Hall's reputation was larger than life, even by California standards. Known across the country as a "drug den and anarchist household," Barrington Hall prided itself on fostering alternative lifestyles. S.F. Chronicle, April 9, 1990, at

---

1. For the sake of brevity, we refer to the residents of Barrington Hall and defendants together as Barrington Hall. At this stage, there is no reason to distinguish between them: If the complaint's allegation of conspiracy and aiding and abetting are taken as true, *see* Third Amended Complaint ¶¶ 7–20, ER 3–7, defendants and Barrington Hall's residents are liable for each other's conduct. 18 U.S.C. § 1962(d) (conspiracy to violate RICO unlawful); *Petro–Tech, Inc. v. Western Co.*, 824 F.2d 1349, 1356–62 (3d Cir. 1987) (aiders and abettors liable under civil RICO as principals).

B3, col. 1. Its bizarre and irreverent rituals included nude dinners with themes like Satan's Village Wine Dinner and the Cannibal Wine Dinner—the latter complete with body-part shaped food. "It was hard on us vegetarians," sniffed one former resident. *Id.* at B4, col. 1.

These bacchanalian festivals often turned riotous. Objects, ranging from bottles to clothes dryers, were thrown out of the building into the yards and homes of neighbors. And in keeping with the counterculture motif, drug use and distribution were common: Plaintiffs allege that no fewer than 19 different enterprises and individuals—with colorful names like "Mushroom Dave," "Icepick Al," "Onngh Yanngh," and "Marybeth (a.k.a. Scarymeth)"—used Barrington Hall as a base for dealing drugs such as LSD, heroin and methamphetamine. Third Amended Complaint ¶¶ 21–39, ER 7–11; *see also* S.F. Chronicle, April 9, 1990, at B4, cols. 1–3 (mentioning the presence of drugs at Barrington Hall).

Even as Berkeley gentrified and grew more conservative, Barrington Hall remained "a place where revolutionary expression was encouraged and often taken to the extreme." *Id.* at B3, col. 1. Barrington Hall was, according to the graffiti on its walls, "An Oasis of Madness in a World Gone Sane." *Id.* at col. 2–3 (photo).

The neighbors were not amused. They blame Barrington Hall for all sorts of social problems, including crime and litter. They also claim that the co-op's residents conducted drug deals and posted look-outs in front of plaintiffs' apartments, bothering them and making it look like they, too, were dealing drugs; and that Barrington's residents, to avoid publicity and conceal their illegal activity, regularly dumped the bodies of persons suffering drug overdoses onto the sidewalks near neighboring apartments.

Two neighbors, plaintiffs Ruth Oscar and Charles Spinosa, filed this suit, charging that the drug-dealing constituted a racketeering enterprise which injured their property. They asked for triple damages under RICO plus recovery on an assortment of pendent state claims. Barrington Hall itself has since gone the way of love-ins and strawberry wine: Defendant University Students Co-operative Association, which owned and operated Barrington Hall, closed the co-op's doors in December of 1989. S.F. Chronicle, July 10, 1990, at A3, col. 1. But this suit remains, proving once again that there is strife after death.

## Discussion

Under civil RICO, persons injured in their "business or property" by a pattern of racketeering activity can recover treble damages and the cost of suit, including attorney's fees. 18 U.S.C. §§ 1962(c), 1964(c). Everyone agrees that the repeated sales of narcotics alleged by plaintiffs amounts to a "pattern of racketeering activity." *See* 18 U.S.C. § 1961(1)(D), (5). Defendants dispute, however, whether plaintiffs adequately pleaded an injury to business or property, and whether their injury was caused by the racketeering activity. The district court agreed with defendants that causation was not sufficiently pleaded and dismissed the complaint. Plaintiffs declined the opportunity to amend and brought this appeal instead.

## I

The first question is whether plaintiffs have alleged an injury to "business or property" that will support a RICO claim. 18 U.S.C. § 1964(c); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985).

A. Defendants claim that plaintiffs had no property interest at all, much less one that was injured. They point out that plaintiffs didn't own their apartments; they merely rented them. *See* Third Amended Complaint ¶¶ 51–55, ER 14–15 (alleging that plaintiffs have leasehold interest in their apartments and parking spaces). According to defendants, this means that plaintiffs had no property interest that could have been harmed.

While federal law controls most questions under RICO, whether a particu-

lar interest amounts to property is quintessentially a question of state law. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law...."); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (property interests "are created and their dimensions are defined by" sources "such as state law."); *Milens v. Richmond Redev. Agency*, 665 F.2d 906, 909 (9th Cir.1982) ("We look to local state law to determine what property rights exist...."). Under California law, lessees such as plaintiffs do have a property interest in their apartments. *Venuto v. Owens–Corning Fiberglass Corp.*, 22 Cal.App.3d 116, 125, 99 Cal.Rptr. 350, 356 (1971); *see* W.P. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 87, at 621 (5th ed. 1984) (any interest sufficient to be dignified as a property right—including a tenancy for a term or a week-to-week tenancy—will support action for interference with its enjoyment). Not even the landlord may lawfully interfere with that property right. *See Brown Derby Hollywood Corp. v. Hatton*, 61 Cal.2d 855, 858, 395 P.2d 896, 898, 40 Cal.Rptr. 848, 850 (1964) (tenant right to possession and enjoyment). This makes sense. One who has paid to use and possess property—even if only for a limited time—is entitled to it for that period and state law protects that right from unjustified interference.[2]

Of course, the limited nature of plaintiffs' property right will affect the amount of their recovery; they are entitled to compensation only for the loss of "market value of [their] term, but not for that of the reversion, in which [they had] no interest." W.P. Keeton, *supra* § 87, at 621 (footnotes omitted). But that's a question of damages; it doesn't affect whether there was a property interest in the first place.

B. Defendants have a back-up argument, however: Even if plaintiffs had a property interest, it wasn't the type of interest RICO protects. RICO, they claim, protects only business property; it doesn't extend to property owned for noncommercial purposes. *See Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1136 (D.Mass.1982). The language of the statute is to the contrary; it requires an injury to "business *or* property." 18 U.S.C. § 1964(c) (emphasis added). Nothing in the statute requires that the property be commercial. Indeed, by referring to business or property in the disjunctive, Congress must have meant for the terms to cover different (though perhaps overlapping) concepts. Under defendants' proffered reading, the term property would be subsumed entirely within the term business and the disjunctive "or" would be rendered meaningless. Normal principles of statutory construction preclude such an interpretation. *See Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir.1988); 2A N. Singer, *Sutherland Statutory Construction* § 46.06 (4th ed. 1984).[3]

C. So we turn to defendants' back-up to their back-up argument, which runs something like this: Plaintiffs didn't lose the right to live in their apartments; they just lost a portion of the enjoyment they would normally derive from living there. This, defendants contend, is not the loss of a property right at all; it is merely a personal injury. And the established law of this circuit is that personal injury alone will not support a RICO claim. *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).

*Berg* does not control this case. The plaintiffs in *Berg* claimed that the defendants had caused their insurance policy to be cancelled. *Id.* Even though the policy

---

**2.** Plaintiffs have alleged other types of property damages as well. For example, they claim that persons acting on behalf of defendants wrote "Go Die" in indelible ink on plaintiff Oscar's car. Third Amended Complaint ¶ 73, ER 19. However, these allegations don't appear in the RICO portion of the complaint. The complaint also fails to allege that the acts were connected with

the racketeering activity. Accordingly, we infer that the loss of use and enjoyment is the only injury to property plaintiffs allege under RICO.

**3.** Defendants' position is remarkably like that of the dissent in *Sedima*, 473 U.S. at 521, 105 S.Ct. at 3302 (arguing that only businesses may bring RICO claims).

was property, we concluded that the plaintiffs suffered no financial harm: They paid no damages while uninsured and then replaced the policy at no extra cost. *Id.* at 465. What they sought was compensation for the stress of having been without insurance. *Id.* at 464. This, we held, was personal injury not damage to property, and therefore not cognizable under RICO. *Id.*

In contrast, plaintiffs here do not seek RICO damages for emotional distress, loss of sleep or any other personal injury caused by Barrington Hall's activity. Their loss is economic: They paid good money for their leasehold interests, which included a right to the use and enjoyment of their property. W.P. Keeton, *supra* § 87, at 619 (undisturbed enjoyment inseparable from ownership of property); *see also People v. Mason*, 124 Cal.App.3d 348, 352–53, 177 Cal.Rptr. 284 (1981); R. Boyer, H. Hovenkamp & S. Kurtz, *The Law of Property* § 11.1, at 404–05 (4th Ed.1991); *cf. Katenkamp v. Union Realty Co.*, 6 Cal.2d 765, 773–75, 59 P.2d 473 (1936) ("It is an axiom of law that one must use his property in a manner which does not unnecessarily damage the property of others, or diminish their equal right to the full enjoyment thereof."). But, as a result of defendants' alleged racketeering activity, they were denied one of the sticks in the bundle which made up their property—the right to its use and enjoyment. R. Boyer, *supra* § 11.1, at 404–05; *see also United States v. Causby*, 328 U.S. 256, 266–67, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946) (overflight of aircraft "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land" is a taking of property). And the loss of that right is clearly economic: There can be no doubt that a leasehold in an ordinary apartment is worth more than a leasehold in a unit besieged by narcotics traffickers.

Plaintiffs' injury is conceptually no different than if a portion of their apartments had been flooded or damaged by fire. It would be possible, in either of these cases, to characterize the injury as merely psychic: The lessees are still entitled to live there; they just won't enjoy it as much. Indeed, just about any injury to property (except theft of the property itself) could be characterized the same way: You still own the pile of scrap metal lying by the side of the freeway, but you won't derive the same pleasure from it as when it was a brand-new Maserati.

■ This argument need not detain us. Even if the harm inflicted by the damage to property is psychological to some extent, the victim can still bring a RICO claim for the injury to the property itself; although the emotional injury is not compensable, the loss of or damage to property is. Thus, RICO entitles the owner of the Maserati to recover triple the value of the ruined car; but it gives him nothing for the pain and suffering of having watched his dream machine reduced to a heap of rubble. Similarly, plaintiffs cannot recover under RICO for their suffering and emotional distress. But they *can* recover for the diminution of the fair market value of their property interest.[4] They ask for no more, *see* Third Amended Complaint ¶ 53, ER 15; and they're entitled to no less.[5]

## II

Having concluded that plaintiffs sufficiently pleaded an injury to business or property, we now address the issue of causation. In doing so, we note that plaintiffs

---

4. Some of the alleged actions may have caused both psychic and property damage. Thus, plaintiffs allege that various defendants threatened them in order to protect the racketeering enterprise. Third Amended Complaint ¶ 16, ER 4–5. To the extent these threats interfered with plaintiffs' enjoyment of their property and decreased its fair market value, they are cognizable under RICO; to the extent they merely caused plaintiff's emotional distress, RICO does not provide a remedy.

5. Defendants also argue that plaintiffs' harm is not financial because Berkeley's rent control ordinance prohibited plaintiffs from selling their interests. But the requirement that plaintiff have a financial interest has no independent statutory significance; it is merely another way of articulating the requirement that plaintiff must suffer an injury to property. Under California law, a thing may be property even if it is not marketable and has no exchange value. 4 B.E. Witkin, *Summary of California Law* § 3, at 10 (9th ed. 1987). For example, an inalienable life estate is property. *See In re Hendy*, 118 Cal. 656, 658, 50 P. 753 (1897); *McColgan v. Walter Magee, Inc.*, 172 Cal. 182, 186, 155 P. 995 (1916). As we have already concluded, plaintiffs' interest does amount to a property interest under the applicable state law.

have alleged the type of unlawful conduct that lies at the heart of RICO: The sale of illegal drugs and the crime and violence associated therewith. This is not a case where an enterprising lawyer has converted a business tort into a federal case; nor is it an ordinary landlord-tenant dispute run amok. Instead, plaintiffs allege precisely the type of conduct RICO was meant to deter—the continuous operation of a drug distribution enterprise. *See* 18 U.S.C. § 1961(1)(D), (5).

■ A. Plaintiffs blame the occupants of Barrington Hall for a multitude of misdeeds, from assault to vandalism;[6] their complaint reads more like an enumeration of the ten plagues than a pleading in federal court. Obviously, defendants aren't liable for every social ill in the neighborhood; RICO liability is expansive, not unlimited. Under RICO, defendants are liable only for the harm inflicted "by reason of" the racketeering activity, 18 U.S.C. § 1964(c); RICO does not afford compensation for injuries caused by other conduct or other persons. *Sedima,* 473 U.S. at 496–97, 105 S.Ct. at 3285; *see Brandenburg v. Seidel,* 859 F.2d 1179, 1187 (4th Cir.1988) (plaintiff must adequately plead causal nexus between harm and racketeering activity). Thus, although Barrington Hall may have been noisy, thrown wild parties and otherwise been less than an ideal neighbor, RICO does not afford plaintiffs a remedy for those wrongs. It provides compensation only for injuries caused by the racketeering conduct.

B. The complaint alleges that residents of Barrington Hall conducted drug sales and posted look-outs in front of plaintiffs' apartments and in their carports. This, they contend, interfered with the use and enjoyment of their property by making them fear for their safety and by making it appear that their apartments were a source of drugs. Third Amended Complaint ¶ 55, ER 15–16. In addition, they claim that Barrington Hall's residents regularly disposed of overdose victims by dumping them in front of the building instead of

summoning emergency assistance, all in an effort to conceal their nefarious activities. *Id.* ¶ 15, ER 4.

Plaintiffs' pleadings are no model, but this much is clear: the racketeering conduct complained of was the direct cause of the alleged injuries. According to the complaint, the racketeers themselves interfered with plaintiffs' use and enjoyment by distributing narcotics on and around plaintiffs' property. Furthermore, plaintiffs alleged that overdose victims languished about the neighborhood because the racketeers were trying to conceal their illegal conduct. The injury was thus the direct consequence of the racketeering activity; there were no intervening causes or actors, and the harm was strictly foreseeable. The blighting of a neighborhood by the fallout from a racketeering enterprise seems to be the type of harm well within the contemplation of the statutory drafters. Causation was adequately pleaded.

■ C. The same cannot be said of plaintiffs' other allegations. Without doubt, plaintiffs found it unpleasant to live amidst "filth, risk of disease, and noise." Third Amended Complaint ¶ 56, ER 16. We also agree that they should not have had to tolerate "violence, [the] throwing of garbage on [their] property, [people] urinating on cars parked at [their property], vandalism," *id.,* and burglary, *id.* ¶ 54, ER 15. But RICO doesn't provide a remedy for unneighborly conduct; it provides compensation only for damages caused by racketeering activity.

Plaintiffs have failed to allege sufficient facts to demonstrate that these problems were caused by Barrington's narcotics activity. First of all, the complaint never explains who committed the alleged wrongs. Of course, the culprits might have been customers of the racketeering enterprise, or even the racketeers themselves; but plaintiffs don't say so. Based on the complaint, it's just as likely that the perpetrators were totally unconnected to

---

**6.** Apparently plaintiffs were unable to come up with any injuries or crimes that begin with the letters w, x, y and z.

Barrington Hall or its racketeering. Certainly, defendants are not liable under RICO for every misdeed ever committed in the neighborhood. In fact, defendants aren't even liable under RICO for the conduct of their social visitors—unless their bad acts can somehow be connected to the racketeering.

Furthermore, the complaint fails to allege *how* Barrington Hall's racketeering activity caused the culprits—whoever they were—to commit the listed offenses. It's certainly possible that Barrington's racketeering drew the perpetrators to the area and encouraged them to commit the offenses; but plaintiffs made no such allegation. Accordingly, the district court did not err in dismissing those portions of the complaint that allege harms but fail to link them to the racketeering activity.[7]

Conclusion

We reverse in part, affirm in part, and remand for further proceedings.

RYMER, Circuit Judge, dissenting:

I have no quarrel with the notion that these aggrieved plaintiffs may have some state law cause of action against "the last rampart" of sixties counterculture. I dissent because I am convinced that their inability to allege *financial* harm sinks their civil RICO claim.

The majority correctly concludes that RICO's requirement of an injury to "business *or* property" does not require a plaintiff to plead injury to "business property." Nevertheless, invocation of the talismanic phrase "property interest" does not suffice to satisfy the statute's requirement of inju-

ry to property. In this circuit, we require civil RICO plaintiffs to allege that they have suffered a "financial loss or injury." *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.1990); *First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 & n. 12 (9th Cir.1988). The proper focus is on the nature of the *loss* these plaintiffs have suffered, not on whether a "property right" exists. Even assuming that these plaintiffs have suffered some harm to a property interest, I fail to see how they have contended that that harm is *financial* in nature. Their complaint, therefore, cannot survive a motion to dismiss. *Cf. Berg*, 915 F.2d at 464 & n. 4 (civil RICO action by plaintiff who had "property interest" in insurance policy could not survive summary judgment because harm from cancellation of policy was not "financial").

The majority reasons that defendants allegedly infringed upon plaintiffs' right to quiet enjoyment of their leasehold—one of the "bundle of sticks" making up their property right. Not according to California law, they didn't. A tenant's right to quiet enjoyment is a warranty by a lessor against her own acts, not against those of strangers. *Marchese v. Standard Realty and Dev. Co.*, 74 Cal.App.3d 142, 148, 141 Cal.Rptr. 370, 374 (1977) (citing *Carty v. Blauth*, 169 Cal. 713, 717, 147 P. 949 (1915); *Lost Key Mines, Inc. v. Hamilton*, 109 Cal.App.2d 569, 573, 241 P.2d 273 (1952)). Thus, disturbance by a neighbor cannot support a lessee's claim of impairment of his right to quietly enjoy his lease.

Plaintiffs' claims sound, if anywhere, in nuisance.[1] Assuming the alleged nuisance here could be characterized as private,[2] it is

---

**7.** Plaintiffs also claim that discarded hypodermic needles posed a threat to their safety and interfered with their use and enjoyment. Third Amended Complaint ¶ 56, ER 16. One could easily infer that the needles were provided by Barrington Hall or were used to inject drugs purchased at Barrington Hall; an allegation to that effect would have sufficiently stated the causal nexus between the racketeering activity and the harm. But plaintiffs made no such allegation and declined to amend the complaint. We defer to the district court's sound discretion on remand as to whether the inference of causation should be drawn from plaintiffs' pleadings or whether plaintiffs should be given an oppor-

tunity to amend their complaint in light of our opinion.

**1.** Generally, under California law, the definition of a nuisance includes "[a]nything which is ... offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property...." Cal.Civ.Code § 3479 (West 1970).

**2.** That assumption is not at all clearly warranted. The ills of which plaintiffs complain sound more like a public nuisance, which is defined by California law as "one which affects at the same

true that " 'any interest sufficient to be dignified as a property right' " will support the action, including "a tenancy for a term." *Venuto v. Owens–Corning Fiberglas Corp.*, 22 Cal.App.3d 116, 125, 99 Cal.Rptr. 350, 356 (1971) (quoting Prosser on Torts 613–14 (3d ed.)). I agree that these plaintiffs' property interest is sufficient to confer standing to bring a state law nuisance suit. *See Stoiber v. Honeychuck*, 101 Cal.App.3d 903, 920, 162 Cal. Rptr. 194, 202 (1980) ("tenancy is a sufficient proprietary interest to give [plaintiff] *standing* to bring an action based on nuisance." (emphasis added)). For purposes of this case, though, the proper focus is not on the nature of plaintiffs' property rights to determine standing but on the nature of the *damage* they suffered.

In general, there are two types of damages a plaintiff may recover for nuisance: (1) loss of value of property and (2) loss of use and enjoyment of property. 9 H. Miller & M. Starr, Current Law of California Real Estate §§ 29:14–15 (2d ed. 1990). The existence of a "property interest" does not automatically entitle a plaintiff to both types of damages. Rather, a plaintiff's measure of damages in a nuisance action is "only an amount sufficient to compensate him for his actual detriment." *Coats v. Atchison, T. & S.F. Ry.*, 1 Cal.App. 441, 444, 82 P. 640 (1905); *see also* Cal.Civ.Code § 3333 (West 1970) (measure of damages is "detriment proximately caused" by defendants' action). We must therefore examine the nature of plaintiffs' "actual detriment."

When a nuisance is continuing, rather than permanent,[3] the usual measure of the first category of damages (loss of value of property) that an owner of property may assert is loss of rental value. *Guttinger v. Calaveras Cement Co.*, 105 Cal.App.2d 382, 387, 233 P.2d 914, 917 (1951); *Ingram v. City of Gridley*, 100 Cal.App.2d 815, 820, 224 P.2d 798, 801 (1950) (citation omitted).[4] That type of loss would qualify as financial. In this case, though, plaintiffs have not sustained that type of injury because they have not alleged that they are even legally capable of renting their property interests to others, much less rent them for higher prices than they were paying their lessors.[5] The rental value to plaintiffs, therefore, is zero and cannot be diminished any further. Plaintiffs in this case differ from other plaintiffs in California cases who were capable of renting their interests and therefore could claim actual, financial injury from a nuisance diminishing that rental value. *See, e.g., Qualls v. Smyth*, 148 Cal.App.2d 635, 637–38, 307 P.2d 29, 30 (1957) (measure of owner's "value of property" damage from periodic "turkey dust" that wafted over from neighboring farm "was the depreciation of the rental or use value of the property"); *Spaulding v. Cameron*, 127 Cal.App.2d 698, 706, 274 P.2d 177, 182 (1954) (owner who lived in premises during period of nuisance received damages for loss of rental value); *Guttinger*, 105 Cal.App.2d at 387, 233 P.2d

---

time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal.Civ. Code § 3480 (West 1970). All other nuisances are considered "private." Cal.Civ.Code § 3481 (West 1970). *See Venuto v. Owens–Corning Fiberglas Corp.*, 22 Cal.App.3d 116, 123–26, 99 Cal. Rptr. 350, 355–57 (1971) (distinguishing private actions based upon public nuisances, which require an injury different in *kind* from the injuries suffered by the general public, from private nuisances). Plaintiffs in this case have not alleged that their injuries are any different in kind from other residents of their neighborhood.

3. A nuisance that will presumably continue indefinitely is considered permanent; one that may be discontinued at any time is continuing.

*Phillips v. City of Pasadena*, 27 Cal.2d 104, 107, 162 P.2d 625, 626 (1945). Because the alleged nuisance in this case has stopped, obviously it was continuing rather than permanent while it lasted.

4. Rental value is different from market value, which is the measure of damages when the nuisance is of a permanent character. *Ingram*, 100 Cal.App.2d at 820, 224 P.2d at 801 (citation omitted).

5. They allege only that "[a] reasonable person would have a reduced desire to rent plaintiffs' apartments" in general, not that the plaintiffs themselves were actually legally capable of renting. Indeed, given that the apartments were rent-controlled, the plaintiffs likely could not sublease them.

at 917; *Ingram,* 100 Cal.App.2d at 820, 224 P.2d at 801.

There are other types of loss of value of property that are financial in nature and would therefore arguably be cognizable under RICO, for example, "actual injuries to the land" and "costs of minimizing future damages." *City of San Jose v. Superior Court,* 12 Cal.3d 447, 464, 525 P.2d 701, 712, 115 Cal.Rptr. 797, 808 (1974) (citations omitted). Another example would be a tenant who loses rental money because a nuisance forces abandonment of the premises with time still left on a lease for a given term (and therefore money still owed to the lessor). *See Kishlar v. Southern Pac. R.R.,* 134 Cal. 636, 66 P. 848 (1901) (recovery for lost value when nuisance compelled lessee to vacate before the lease ended and building stood idle for over nine months). Plaintiffs in this case have alleged none of these other types of financial loss. They are not out one cent from defendants' alleged acts, either in foregone opportunity or money owed or damage needing repair. In short, they have alleged no financial loss at all.[6]

Instead, plaintiffs' allegations implicate the second type of nuisance injury: loss of use and enjoyment. That is a perfectly proper thing to allege in a nuisance action, and there need not be actual loss of value in order to sustain a nuisance claim for annoyance, inconvenience, discomfort, mental distress or the like. *See City of San Jose,* 12 Cal.3d at 464, 525 P.2d at 712, 115 Cal.Rptr. at 808; *Acadia, Cal., Ltd. v. Herbert,* 54 Cal.2d 328, 337, 353 P.2d 294, 299, 5 Cal.Rptr. 686, 691 (1960); *Smith v. County of Los Angeles,* 214 Cal.App.3d 266, 287–88, 262 Cal.Rptr. 754, 766 (1989); *Qualls,* 148 Cal.App.2d at 637–38, 307 P.2d at 30; *Spaulding,* 127 Cal.App.2d at 706,

274 P.2d at 182; *Alonso v. Hills,* 95 Cal. App.2d 778, 788, 214 P.2d 50, 57 (1950). Yet even if such damage is labeled an "injur[y] to real property," *City of San Jose,* 12 Cal.3d at 464, 525 P.2d at 712, 115 Cal.Rptr. at 808, it is not a financial loss. "Personal discomfort and annoyance to which a person has been subjected by a nuisance on adjoining property," which describes this second type of nuisance damage, "is like that claimed by the plaintiff in a personal injury action." *Ingram,* 100 Cal.App.2d at 823, 224 P.2d at 803. It is settled that personal injuries are not financial losses compensable under RICO. *Berg,* 915 F.2d at 464.

If defendants diminished plaintiffs' enjoyment of their property, then plaintiffs may sue to their hearts' content—in state court, alleging nuisance. But in my view, this complaint was in the wrong court under the wrong statute and the district court properly dismissed it.[7]

---

**6.** The majority reasons that plaintiffs' loss is "economic" because their leases are "worth less." *Ante* at 812. They may be "worth less" in a lay understanding, but the characterization is legally immaterial. The leases have no quantifiable "worth" to the plaintiffs to begin with, so the leases' legal value to them has not been diminished, at least given the absence of an alleged capability to earn something from the property. The majority dignifies potential recovery for an abstract loss—a diminished "market value" in general—even though as to *these*

plaintiffs, who are incapable of marketing the property at all, it has no legal rental value. There is no such thing as market value "in the air," as it were.

**7.** The district court need not have given plaintiffs leave to amend because this complaint was already their fourth try.

Because I believe the complaint did not state a RICO cause of action, I would not reach the causation issue.